The EAST TENN., VA. & GA. RAILWAY CO. *v.* SUDDETH.

1. That the company furnished its employee with a lamp which became extinguished whilst the latter was making a signal with it in the usual way, raises no presumption that the company was negligent.

2. That the employee, whilst passing in the course of his duty over a car loaded with ore, stepped upon a piece of the ore, which turned under his foot, whereby he was precipitated from the car and severely injured, is evidence of injury by accident rather than by any fault or negligence of the company. That the car was loaded by heaping up the ore at each end, leaving a depression in the middle, affords no suggestion of unusual or improper loading.

3. Where the alleged injury was in one county and the suit was brought in another, and these facts appeared on the face of the declaration, appearance and pleading to the merits, without objecting to the jurisdiction, waived the objection; and the question could not be raised at a subsequent term by withdrawing the plea and moving to dismiss the action for want of jurisdiction.
   December 23, 1890.

Railroads.    Master and servant.    Negligence.    Jurisdiction.    Practice.    Waiver.    Before Judge MILNER. Gordon superior court.    February term, 1890.

Reported in the decision.

BACON & RUTHERFORD, MADDOX & LONGLEY and DORSEY & HOWELL, for plaintiff.

J. C. FAIN and O. N. STARR, for defendant.

BLECKLEY, Chief Justice.

1. Not even the faintest tinge of a presumption was raised against the company in respect to the lamp. On that subject the plaintiff testified as follows : "After setting switch, I signalled the engine ahead. This is done by raising lamp up and down. This I did in the usual way. In making signal my lamp went out. Defendant furnished me with this lamp; it was in the caboose when I went to work." The only act of the company proved by this testimony is the furnishing of the lamp. Who filled it with illuminating material, trimmed it and lighted it, does not appear. Nor does it appear what caused it to become extinguished in the act done by the plaintiff himself of moving it up and down in making the signal in the usual way. There is no suggestion that the lamp was of poor quality, or that there was any defect in its construction, or any failure to supply proper materials with which to keep it lighted. As the plaintiff was charged with the custody and use of the lamp, it was certainly his duty to keep it in a condition for safe use, in so far as the quality of the lamp and the materials supplied would enable him to do so. Whether he performed this duty or not, his testimony gives no hint. He was no less unhurt after the lamp went out than he was before, so that the going out of the lamp did not cause the physical injury for which his action is brought. Even it it had done so, it would not have raised any presumption against the company, unless he had proved himself free from fault in all the dealings with the lamp which devolved on him. *Central R. R.* v. *Kenney,* 58 *Ga.* 485.

2. The plaintiff evidently regarded the lamp as in a fit condition to be relighted; for to relight it at the engine was his purpose when he climbed upon the train and commenced going forward over the tops of the cars to reach the engine. Why the more simple and ready

resource of striking a match was not available, does not appear, except inferentially. He says nothing about having no matches; but this was probably the case, inasmuch as he started to the engine to obtain the means of relighting. In passing over the cars in the dark, he sustained the injury, and the next question is whether the evidence establishes any negligence of the company in loading the car from which he fell. On that subject he testified as follows: "The car next to the box-car was loaded with iron-ore, and there were three or four flat cars ahead loaded with lumber. The car loaded with iron-ore was what is called a dinkey. It is a short car with one set of trucks to each end, that is to say four wheels. It is a regular ore-car. The ore was piled up at the ends of the car because of there being only one set of trucks, and it was not full in the middle. I had never seen the car or noticed it on the train. The train was made up in Rome by the yard-men. I got down from the box-car I was on, after setting up one brake, passed to the north end of the car loaded with the ore, put my left foot down and was in the act of stepping across to the other car, when the piece of ore under my left foot turned and I fell off the car; and I fell between the cars and my leg was cut off." Another witness, introduced by plaintiff, testified as follows: "This car was a regular ore-car. It is short. I have seen lots of them. They are usually loaded by piling up the ore on them. Being short, you have to do this in order to get a load on them." It seems to us that there is no suggestion in this testimony that the car was loaded in an unusual or improper manner. Granting that the plaintiff was free from fault in all he did, his own testimony and that of his witness screened the company by pointing out mere accident rather than the fault of any one as the cause of the injury. While the general rule is that the com-

pany must explain where the fact of injury is proved and the plaintiff shows himself free from fault, yet where he is the only employee who directly participates in the act resulting in the injury, and where the evidence which goes to make out his case points distinctly to accident, rather than to any negligence whatever on the part of the company or its employees, it would seem unreasonable to apply the general rule. Why should the company be required to prove itself free from fault, when the evidence for the plaintiff fails even to suggest any fault whatever against it? The car was an ordinary ore-car loaded by heaping up the ore at the ends. It was usual to heap up the ore in such cars. And the plaintiff's evidence suggests a reason why the heaping should be done at the ends, namely, because the cars have a style of trucks which would render the ends capable of supporting a heavier weight than the middle. Although this particular car was taken on at Rome in the night and the plaintiff had not seen it before he undertook to pass over it, yet he does not profess to have been unacquainted with that kind of cars or with the usual manner of loading them with ore, nor does he or his witness state that this car was loaded in an unusual way. On the contrary, the fair inference from their testimony as above recited is that the loading was such as was usual and as the plaintiff might have had reason to expect. His fall was caused by the turning of one piece of the ore under his foot. *Prima facie*, such an occurrence is a mere accident. It was an accident that he stepped on that particular piece of ore, and an accident that it turned under his foot. Such casualties, it seems to us, appertain to the risk of the service in which the plaintiff was engaged. *Lee* v. *Central R. R.*, this term. 86 *Ga.* 232.

3. Had the defendant's motion, made at the third term, to withdraw the plea which it had filed at the

first term to the merits, been granted, the defendant would have been in no condition to move to dismiss the case for want of jurisdiction. Pleading to the merits without pleading to the jurisdiction, and without excepting thereto, admits the jurisdiction of the court. Code, §3461. The declaration showed on its face that the injury complained of was done in Floyd county. The defendant was obliged to take notice of that allegation before pleading to the merits, and consequently the suggestion that the plea was filed inadvertently, is without efficacy. Parties must be held to full diligence in taking notice of facts which appear on the face of the pleadings.

For error in refusing a new trial upon the merits of the case, the judgment is                    *Reversed.*