JOSEPHINE ENRIGHT, ADMINISTRATRIX, ETC., v. THE TOLEDO, ANN ARBOR & NORTH MICHIGAN RAILWAY COMPANY.

*Master and servant—Negligence—Proximate cause—Fellow-servants.*

A freight conductor, whose train was standing on the main track within the station limits, was killed by a freight train running into his train. A rule of the company required freight engineers when approaching stations, to have their trains under full control, expecting to find trains using main tracks within station limits. It was conceded that the engineer and conductor, both of whom knew of the rule, were fellow-servants. And it is held that the proximate cause of the accident was the failure of the engineer to obey the rule, and that the company is not liable for the consequent injury to the conductor upon the ground that he was acting at the time under an erroneous order issued by its train dispatcher.

Error to Shiawassee. (Newton, J.) Argued October 12 and 13, 1892. Decided November 4, 1892.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Lyon & Hadsall* and *T. W. Whitney*, for appellant.
*Watson & Chapman*, for plaintiff.

GRANT, J. Plaintiff's decedent, James Enright, was

in the employ of the defendant as freight conductor. On the night of the 27th of February, 1890, he was in charge of a freight train going south-easterly over its road. He had stopped his train on the main track at Ithaca. While it was standing there, early the next morning, and while it was dark, a freight train, going in the same direction, ran into it, and killed Mr. Enright. Plaintiff recovered verdict and judgment.

The negligence claimed is—

"That the train dispatcher directed Enright to stop his train, which was going south-easterly, at Ithaca, and to wait there for a train going in the opposite direction to pass; and then directed a train following Enright's, and going in the same direction, to run straight through to Owosso, a point beyond Ithaca, well knowing that, if the conductor of the following train obeyed his train order, his train must collide with Enright's train; that the following train did run into the rear end of Enright's train at Ithaca, and Enright was killed while sitting in the caboose of his train."

Rule 97 of the defendant governs the management of freight trains in their approach to stations, and is furnished to its conductors and engineers for their guidance. It reads as follows:

"The track between extreme switches at any station will be considered station limits. Freight trains may use main track within station limits at any station up to within ten minutes of the time of a passenger train. After that time they will be governed by rule 99. Freight trains can use the main track between extreme switches at any station, regardless of trains of the same or inferior class. Freight trains will approach all stations under full control, expecting to find trains using main tracks within station limits."

Enright and his fellow-servants on his train had the right to rely upon the observation of this rule by those in charge of the train following them. That he did rely upon its observance, and consider himself in a place of safety,

is evidenced by the fact that he placed no torpedoes upon the track in his rear, nor gave any other signal to any train that might approach. He knew that this very train was behind, and would soon follow. The two trains were together at Shepherd, about 19 miles distant from Ithaca, and Enright conversed with the engineer of the other train. That engineer told him that it was a very bad night; that he was going to wait there 50 minutes or an hour after Enright left, before he pulled out to follow him; and said to him, "If you do stop anywhere to-night on the road, give me some show;" to which Enright replied, "I will." Enright was 29 years old, and had been engaged in railroad service for 14 years, and it is conceded that both he and those in charge of the following train had knowledge of rule 97. Those in charge of freight trains are not notified by the defendant where trains which are ahead of them will stop. The engineer of the following train testified that he had been in the employ of the defendant for 10 years, and that he had never received warning of a train which was running ahead of him, or the same way he was running. Trainmen are expected to rely upon and observe this rule. The requirement always to observe it leaves no excuse for violating it.

The track enters Ithaca on a down grade, and over a sharp curve. The night was stormy, and the track covered with ice. The engineer did not approach the station with his train under control, and when he saw the rear of Enright's train he could not stop his own in time to avoid the accident. Enright's train was drawn by engine No. 23, and the following train by engine No. 18. Both trains were extras. Coming from the opposite direction were engines 46, 88, 29, and 28. These trains were all running on orders from the train dispatcher. No. 18 was ordered to run extra from Clare to Owosso. The only difficulty with any of these orders is in that of No. 59, which was

delivered by the telegraph operator to Enright at St. Louis. It is claimed by the plaintiff that this order provided for a meeting point for engine No. 29, while defendant insists that it provided for a meeting point for No. 28. It is furthermore claimed by the plaintiff that Enright, reading this order as providing a place to meet No. 29, was acting in obedience thereto in stopping at Ithaca.

From the view we take of the case, it is unnecessary to determine the facts in regard to this order. Whether it was the fault of the dispatcher, or of the telegraph operator in copying, or whether the figures "29" were first written in the order, and then changed to "28" before delivered to Enright, are questions we need not discuss. Nor is it necessary to determine whether the dispatcher and telegrapher and Enright were fellow-servants. The order to the trainmen of No. 18 did not authorize or direct that that train be run straight through from Clare to Owosso without regard to the freight train that was ahead of it. It conveyed no information that the track was clear for them between Clare and Owosso, nor was it so understood by them. All the trainmen who received that order understood that they were to execute it in accordance with rule 97, which directed them to approach stations expecting to find trains using the main track within station limits; and that the absolute requirement of the company was to keep the train under control. Their duty in this respect could have been no other or different if they had had positive knowledge that Enright's train was standing there. The learned counsel for the plaintiff recognized this as the rule of law by his attempt to show that the engineer of train No. 18 was doing his best to comply with rule 97. It is unnecessary to repeat the evidence of this engineer to show that he was not complying with the rule. He does not pretend that he could not have controlled his train if he

had approached at the proper speed. On the contrary, he said that if he had known that the train was standing there he did not think he would have run into it. He knew that Enright's train was ahead, but he said he did not expect to find it at Ithaca. The neglect of this engineer thus to control his train was the proximate cause of the accident.

It is apparent that it is for the interest and safety of all persons interested that a rule like that in question should be one of universal application. It is far more certain to secure the protection of the company's employés than would be a rule requiring the train dispatcher to notify each train of the position of those going in the same direction. If the latter were the rule, the opportunity would be left open for just such mistakes as the one claimed to have been made in the present case. By observing the other, absolute safety is secured, except in those cases where some unforeseen cause may place the train beyond the control of those in charge.

It is conceded that the engineer of train No. 18 and Enright were fellow-servants, that he was competent, and that his train was properly equipped. The circuit judge should have directed a verdict for the defendant.

Judgment reversed, and new trial ordered.

McGrath, C. J., Long and Montgomery, JJ., concurred. Durand, J., did not sit.