East Tenn., Va. & Ga. Railway Co. *v.* Reynolds.

Although the coming apart of the train, and the running back of a portion of it, may have been the result of the engineer's negligence, and have made it necessary for the conductor to go back and flag an approaching train, yet, as the immediate and proximate cause of his injury was his slipping and falling upon a cross-tie forming a part of a trestle, the injury was a mere casualty incident to the business in which the plaintiff was engaged, and he was not entitled to recover. This is true, although there was upon the edge of the cross-tie a small bit of decayed sap, the breaking of which from the tie itself caused the plaintiff's fall. There was no negligence of the company, relatively to the plaintiff, in having a defective cross-tie, the purpose of having ties not being to make a way for employees to walk upon, but to make a safe road-bed for the running of trains.

March 19, 1894. Argued at the last term.

Action for damages.    Before Judge MILNER.    Whitfield superior court.    April term, 1893.

McCUTCHEN & SHUMATE, for plaintiff in error.

R. J. & J. McCAMY, *contra.*

LUMPKIN, Justice.

In this case a new trial should have been granted because, under the facts in evidence, the plaintiff was not entitled to a recovery.

The freight-train upon which the plaintiff was a conductor having stopped for some reason, he started forward to ascertain from the engineer the cause of the stop, at the same time sending a flagman back on the track with a red light for the purpose of warning a train which was following in his rear    Before the conductor reached the engineer, the latter started the train, when, by the breaking of a link, it came apart, and the rear portion, upon which the conductor then was, began to roll backwards down the track, and in so doing, passed the flagman already mentioned.    The conductor, by applying the brakes, succeeded in stopping the detached portion of the train, and then undertook to go back on the track himself for the purpose of warning the approaching train in time to avoid a collision.    That train was not then in sight.    The track, in the direction from which the train was approaching, was perfectly straight for a mile or more, and the headlight of an approaching engine could, without difficulty, have been seen for a considerable distance, although it was a dark and rainy night.    In going back to signal this train, the conductor started across a trestle in great haste, and when about half way across, he stepped on a cross-tie on the top of which was a small bit of decayed sap, which slipped off or came loose from the tie, causing him to fall and to become seriously injured.    The flagman already mentioned was the only train-hand the

conductor had with him, another flagman who started on the trip having become injured at a station the train had passed before reaching the place of the accident, and being, in consequence, unable to continue upon the journey. This fact explains why the conductor himself went back to flag the train following his own.

The above, in brief, sets forth the substantial facts of the case. The declaration alleged that the coming apart of the train resulted from the engineer's negligence, and that the company was also negligent in having a defective cross-tie in the trestle.

Granting that the engineer was negligent as charged, we do not think this negligence was, under the circumstances, the proximate cause of the plaintiff's injury. After the breaking of the link between two of the cars, the rolling back of those cars which were thus detached was a distinct and intervening cause scarcely to have been foreseen, but which made it necessary for the conductor, after stopping these cars, to go down the track with his lantern to signal the coming train. Again, after he had gotten down from the cars upon the track, his hasty and rapid progress over the trestle was yet another cause which brought about the accident resulting in his injury; while the real and immediate cause of this accident was the slipping of his foot upon the cross-tie, because of the giving way of the little piece of decayed sap upon its edge. We therefore think the alleged negligence of the engineer, if it existed at all, was entirely too remote to be treated as the cause of the plaintiff's injury. This being so, he had no cause of action against the company, unless it was negligent in allowing the cross-tie in question to remain in the trestle with the bit of decayed sap upon it. Relatively to the plaintiff, we do not think this was negligence. It did not appear that this cross-tie was not otherwise sound and in all respects sufficient and suitable for the

use for which it was intended. It certainly was not the purpose of the company, in having ties, to make a way for employees to walk upon, but to make a safe road-bed for the running of its trains. The simple truth is, that the injury the plaintiff received was a mere casualty incident to the business in which he was engaged, and the ordinary risks of which he assumed in accepting his employment. This seems too plain for argument. Accidents will happen, not only in the best regulated families, but upon the best regulated railways as well; and to allow the recovery to stand in the present case would be holding the company liable for the consequences of a mere accident for which it is in no fair view responsible.

We have not stated or discussed the numerous grounds of the motion for a new trial, because the views above expressed cover the merits of the case, and render it unnecessary to go into further detail.

The case mainly relied on by counsel for the defendant in error was that of *Simmons* v. *East Tennessee, Virginia and Georgia Railway Company*, decided last term. 92 *Ga.* 658. That case is distinguishable from the case at bar in several particulars. In the *Simmons* case, the trial court held that the declaration did not set forth a cause of action, and therefore, for the purpose of deciding the question thus raised, the allegations of the declaration were assumed to be true. According to those allegations, the negligence of the engineer was the direct and immediate cause of bringing about the situation requiring prompt action on the part of the plaintiff. In the present case, the negligence of the engineer, if there was any, was the remote, and not the proximate, cause which made it necessary for the plaintiff to adopt a certain line of conduct. Again, in the former case, the negligence of the engineer occasioned a real emergency, which not only put in imminent danger the prop-

erty of the company, but also the lives of Simmons and his fellow-servants on the train upon which he was employed. In the case at bar there was nothing of this sort, for there was no imminent danger impending. The train following that of which Reynolds was in charge as conductor was not near, and there was no reason for apprehending a collision which might result in the destruction of Reynolds' train or in injury or death to himself or others. Lastly, the position of peril brought about by the negligence of the engineer in the *Simmons* case required prompt and immediate action on the part of Simmons. He had little or no time for reflection, and could not possibly be as careful and as circumspect as it might be reasonably expected he would be under ordinary circumstances. The company, being responsible for this perilous situation, had no right to expect from Simmons that degree of care and diligence which it would be incumbent upon him to exercise when there was no emergency, or when the emergency was brought about through his own fault. Besides, he was acting under the express orders of the conductor who was his superior officer, and had no opportunity, nor, under the circumstances, was bound at his peril to determine whether obedience to such orders would be proper or not. While, ordinarily, it would have been his duty to disregard an order which it would be manifestly unsafe to obey, he had no time to consider this question; and in the emergency which was then upon him, was not negligent in assuming that the orders of his superior were proper, or in acting upon them. Therefore, though his stumbling and falling while passing over the car of coal might, in a sense, be a casualty incident to the business in which he was engaged, it was one directly brought about in consequence of the company's negligence. In the case before us there was no pressing occasion for instant and hasty action on the part of

Reynolds, who was himself the chief officer of the train, and acting under orders from no one. He had ample time to cross the trestle slowly and carefully, and to go a sufficient distance to stop in time the expected train, without taking upon himself any unnecessary risk. By simply looking down the track and listening, he could easily have seen that there was no need of great haste on his part, and he had ample time to do with the proper care all that was necessary. There are other differences in the two cases, but those already pointed out will suffice to show that the decision in the present case is not at all in conflict with that made in the *Simmons* case.

*Judgment reversed.*