## SEABOARD AIR-LINE RAILWAY *v.* BISHOP.

1. Where in an action for damages for a personal injury the presiding judge erroneously gave to the jury an instruction which authorized them to add to their verdict and include in it interest at the rate of seven per cent. from the date of the injury, and where the evidence clearly shows the date of the injury and the date of the verdict, so that any possible amount allowed as interest which may have been added to the verdict in pursuance of the erroneous instruction could be accurately calculated and definitely determined, the discretion of the trial judge in allowing any possible interest which may have been included in the verdict to be written off from it and the judgment, and thereupon refusing to grant a new trial upon the ground of such erroneous charge, will not be disturbed.

(a) In this case the judge undertook to correct the possible effect of an erroneous charge by giving instructions in the manner above referred to, but on account of an error in calculation the amount. so allowed to be written off was insufficient, by a small amount, to cover the possible amount which may have been included in the verdict as interest. Upon review, after ascertaining from the record the greatest possible amount which may have been included in the verdict as interest, this court will affirm the judgment of the trial court in refusing a new trial on the ground of the erroneous charge referred to, with direction, however, that, within thirty days from the filing of the remittitur from this court in the court below, the plaintiff write off from the verdict and judgment the amount specified in the opinion in this case, which should have been written off as representing any possible interest which may have been included in the verdict; but upon a failure so to write off, the judgment to be reversed.

2. There was sufficient evidence to support the verdict.

ATKINSON, J., dissenting. The evidence was not sufficient to authorize the jury to find that the plaintiff was injured by the running of the locomotives, cars, or other machinery of the defendant, or by any person in the employment and service of the company. This being true, although the evidence was sufficient to show that the plaintiff was himself free from fault, it was insufficient, after proof of the injury, to raise the statutory presumption against the defendant. In the absence of such statutory presumption, the evidence was not sufficient to support the burden resting on the plaintiff of proving the grounds of negligence alleged in the petition.

Argued May 26, 1908.—Decided February 19, 1909.

Action for damages. Before Judge Holden. Madison superior court. September 28, 1907.

Bishop brought an action for damages against the Seaboard Air-Line Railway, on account of a personal injury. A verdict in his favor was rendered. The defendant moved for a new trial, which was denied, and it excepted. Under the pleadings and evidence it appears, among other things, that the plaintiff, while employed by the defendant as a yard conductor at Athens, Ga., was instructed by his superior officers to relieve the conductor on a passing freight-train, and to act as such conductor until the train arrived at Greenwood, S. C. The train consisted of 24 or 25 cars, all loaded, and a conductor's cab, upon which was a cupola. In obedience to his orders, after leaving Athens, it became necessary to sidetrack the freight-train at Colbert, Ga., in order to allow another train to pass. As his train was approaching Colbert, as it was his duty to do, the plaintiff started over the top of the train in order to reach the front, so that he might see that the train was properly sidetracked, and that it left a clear track on the main line for the other train which was due in a very short time. He knew that there were some shanty cars, the couplings of which were in bad order; and if the brakemen missed the coupling, there was danger of knocking them out on the main line. One of the cars over which he had to pass was a flat car loaded with two boilers and a lot of iron piping. The boilers were on the rear part of the car, and occupied it from one side almost to the opposite side, thus leaving a narrow space which could be used as a passageway. The front of the car was filled with the piping, which was laid parallel with the length of the car, and filled it entirely from one side to the other. When the plaintiff reached the piping it was necessary for him to walk across it in order to reach the ladder on the next car. When about half way across the piping he felt a severe pain in his foot, and looking down discovered that a large forty-penny nail had stuck entirely through the front part of the foot under the ball of the toe in a slanting direction, coming out on top of his foot about an inch and a quarter from the root of the toe. It was a dark, gloomy day, and was raining at the time of the injury, and the plaintiff did not see the nail before it entered his foot, but found the nail securely fastened between the piping so that it was difficult to get his foot extricated. The nail was no part of the machinery or piping, and did not have any connection with either.

The car was consigned from Atlanta, Ga., to Delk, Fla. It was neither the plaintiff's duty, nor had he time, to inspect the car or the manner of its loading. The ground of negligence charged in the petition was in allowing and permitting the nail "to get and remain between the said piping, sticking up some two or three inches, slanting backward, and to be firmly fastened . . in a place which would necessarily be traversed, used, and walked over by the brakemen and petitioner." There was no direct evidence as to the position of the nail, or how or why or when or by whom it was placed upon the car, nor was there any testimony upon the subject of inspecting the car or the manner of the loading by the defendant at any time. Certain rules of the defendant relative to the duties of employees were introduced, as follows: "1. Employees, whose duties are prescribed by these rules, must provide themselves with a copy. 2. Special instructions, given by authority of parties heretofore designated, must be observed while in force. 3. Employees are required to be conversant with, and obey the rules and special instructions. If in doubt as to their meaning, they must apply to proper authority for explanation. 27. Every employee is required to exercise the utmost caution to avoid injury to himself and others, especially in the switching and other movements of trains. 39. All persons entering the service of this company will be required to sign an acknowledgment that they understand and agree to obey the rules and regulations of this company, with respect to their duties. No person will be considered engaged as a trainman until he has been accepted by the trainmaster, and has signed the agreement to observe and comply therewith. 45 (a) The proper place for the freight-train conductor, while his train is in motion, is in the cupola of his caboose, if it has one; if the caboose should not be provided with a cupola, he will then maintain such position, either on the top or inside, as will give him a full view of his train, and enable him to see that his men perform their duties, and that they go out promptly, when necessary to flag. He must also keep a sharp lookout, especially when rounding curves. He should not ride on the engine except in case of necessity." The evidence tending to show that the plaintiff had notice of these rules was from the plaintiff himself, who testified with reference thereto as follows: "It [rule-book exhibited] is rules

and regulations of the Seaboard Air-Line. I had one similar to that once, when I was first put out on the road; this is about as large; that is not the only difference; there is a good deal of difference. I don't remember the date of the rules I had. I don't remember what time I went to work with the Seaboard. It has been a good long while. I said about seven or eight or ten years ago. I can't say about whether these are the same rules. I didn't have a rule-book long. It was taken from me and some changes made in it, and I never did get it back. When I had the book I familiarized myself with the book as best I could. I really can't say when was the last time I had a rule-book. I am not familiar with rule No. 1, that employees must provide themselves with a copy of the rules. Don't know anything about that rule. I am not familiar with that rule. I might have heard it. I have heard rule No. 2, that employees must be conversant with and obey the rules, and, if in doubht of their meaning, must apply to other authority for instruction. I don't know about No. 27, which says that every employee must exercise the utmost caution to avoid injury to himself or other employees, especially in switching of trains. There may be a whole lot in there that I am acquainted with, and a whole lot that I am not familiar with; they should have given me a rule-book when I went back there, and they failed to do it. I did not ask for one; it wasn't my business to do so. I don't know anything about rule No. 47, that required a conductor to ride in the cupola while the train was in motion. It is like I say: I may have heard of it and may have forgotten it." Another witness testified: "I can't tell you how long that book has been in use by the Seaboard Air-Line. It was in use at the time Mr. Bishop received that injury. I examined this book this morning, so as to be able to identify it." The engineer of the train on which the plaintiff was hurt testified: "This is the rule-book in use by the Seaboard Air-Line at that time, but it was revised in 1897, and was the rule-book in use at the time Mr. Bishop was hurt. . . The rule-book was given to some of the employees. They were supposed to be given to all of them. Of my own knowledge I don't know whether they were given to anybody but myself."

The date of the injury was January 8, 1906. The judgment entered on the verdict was dated September 3, 1907, and the

motion for new trial recites that the verdict was rendered on that date. In his charge the judge gave the following instruction to the jury: "When a party is damaged and another is liable for the same, interest is not recoverable as interest in itself, and as such, that is, not in the name of interest, but the jury may consider the length of time that damages have been withheld and all the circumstances, and may in their discretion increase the amount of damages accordingly. I charge you seven per cent. is the lawful rate of interest in this State." The verdict was for $2,000. On the hearing of the motion for new trial counsel for plaintiff voluntarily wrote off from the verdict $190.29 to cover any possible interest which might have been included in the verdict. The presiding judge allowed this to be done over objection of counsel for movant; and this was assigned as error. After hearing the motion the judge passed the following order: "After hearing argument it is ordered that the motion for new trial be and is overruled. As the plaintiff has voluntarily written off the sum of $190.29 on account of interest charged, the verdict is hereby reduced that amount, and will stand only for such lesser amount, to wit, $1,809.71; the said amount written off as aforesaid being the highest amount the jury could have found as interest under the charge of the court. complained of in the second ground of the amended motion for new trial." The defendant excepted to this order.

Cobb & Erwin, Shackelford & Shackelford, and J. F. L. Bond, for plaintiff in error.

E. K. Lumpkin and John E. Gordon, contra.

LUMPKIN, J. 1. It was contended that the judge erred in allowing counsel for the plaintiff to write off any portion of the verdict without the consent and over the objection of counsel for the defendant, and in not granting the motion for new trial. The principle underlying the question here raised has been considered in several decisions of this court. Where damages are of a character in the fixing of the amount of which the discretion of the jury is involved, as in cases of general damages, or damages for pain and suffering, or the like, the determination of the amount is peculiarly for the jury. If the finding is so excessive as to justify the inference of gross mistake or undue bias, the proper mode of correction on the part of the presiding

judge is to grant a new trial. Civil Code, § 3803. He can not substitute his discretion or finding of a proper amount for that of the jury, and grant a new trial unless the plaintiff will write down the verdict to an amount with which he is satisfied or which he would have found had he been a jury. If bias or prejudice on the part of the jury infected their finding, decreasing the amount would not wholly eradicate the infection. The same bias or prejudice which prompted the finding of an excessive verdict may have had its effect in producing the finding in favor of the plaintiff at all. Therefore in such cases the presiding judge should grant a new trial unconditionally, and not refuse it on condition that some of the verdict be written off, or require the plaintiff to write off a portion of it, and thereupon on that basis refuse a new trial. In cases of the character above indicated there is no exact measure by which the excessive portion of the verdict can be segregated from that which is proper, and written off from it. But there is another class of cases where this can be done, and where there is no necessity for the granting of a new trial in order to correct a finding for an erroneous amount which can be accurately measured and deducted from the verdict. As early as the case of *Griffin* v. *Witherspoon*, 8 *Ga.* 113, it was said: " Where the jury found a verdict for a greater amount of damages than was claimed in the plaintiff's declaration, and a motion for a new trial having been made on that ground, the plaintiff entered a remittitur on the record for the excess: *Held,* that the plaintiff had a right to enter such remittitur, and that a new trial on that ground ought to have been refused." The case there involved was an action for deceit, with damages laid at $1,000. The jury found a verdict for the plaintiff for a thousand dollars, with interest from a specified date. The defendant moved for a new trial on the ground that the verdict was illegal as to the interest. The plaintiff entered a remittitur for such interest. The court notwithstanding granted a new trial on the ground stated. The plaintiff excepted, and the judgment was reversed. There the measure of the excess, and therefore of the error in the verdict, could be determined; and this court held that it was the right of the plaintiff to cure the error by writing off such excess and to have the verdict stand. In *Macon R. Co.* v. *Stewart*, 125 *Ga.* 88 (7), (54 S. E. 197), in a

suit for damages against a railroad company for the killing of stock, the jury found a certain amount as interest and also an amount for attorney's fees. This court said: "The plaintiff having voluntarily written off the amount in the verdict found as interest, the judgment will be affirmed, with direction that the amount found as attorney's fees be also written off, and the judgment in other respects stand affirmed." In *Seaboard Air-Line Ry. v. Randolph,* 129 *Ga.* 796 (59 S. E. 1110), the subject was considered and numerous authorities cited. In that case the suit was by a widow for the homicide of her husband. The jury found for the plaintiff an amount somewhat over $9,000. The presiding judge expressed his disapproval of the verdict as being for too large a sum, and stated that he would not approve a verdict for more than $6,500. He then allowed counsel for plaintiff to write the verdict down to that amount, and refused the new trial. This was held to be error. A similar ruling was made in *Central of Ga. Ry. Co. v. Perkerson,* 112 *Ga.* 923 (38 S. E. 365, 53 L. R. A. 210), where the suit was also by a widow for the homicide of her husband. The distinction between the two classes of cases, in one of which there is no accurate mode by which the error can be cured and in the other of which there is such a mode, will be readily apparent on consideration. In the case of *Seaboard Air-Line Ry. v. Randolph,* supra, it was said in the opinion (p. 800): "In cases where, from the application of the law to the evidence, an excess in the verdict can be accurately ascertained and the verdict corrected by plaintiff's writing it off, a different rule might apply." It is a general rule that reversals will not be granted for harmless error. The case now before us was not one in which the jury could add interest to the damages found by them. *Western & A. R. Co. v. Young,* 81 *Ga.* 397 (7 S. E. 912, 12 Am. St. R. 320). The presiding judge therefore erred in charging the jury that they might include in their verdict interest on the amount which they would otherwise find, at the rate of seven per cent. per annum from the time of the injury. If the jury added interest in making up their verdict, it is quite clear that, following the rule laid down by the court, the instruction complained of could not have induced them to add more than 7 per cent. upon what they would have otherwise found, and that the utmost injury which could

have accrued to the defendant from this charge was an inclusion of such amount of interest in the verdict. We do not know of any law which prohibits a plaintiff from writing off a part of his verdict. The question which has arisen is rather as to what effect such writing off shall have upon the presiding judge in passing upon a motion for new trial. Here the utmost injury which could have arisen from the error in the charge can be accurately determined. Counsel for plaintiff undertook voluntarily to write off the highest amount which the jury could have awarded as interest from the date of the injury to the date of the verdict. The judge recognized the error of his charge, and that the proper correction would require the writing off of all the interest which the jury could have found. He recited in his order that this had been done. Upon a careful calculation it appears that the amount written off was slightly less than it was possible for the jury to have found as interest. The amount which should have been written off was $207.40. Thus there is an error in calculation of $17.11. Counsel for plaintiff, both in their argument and brief, urged that, having sought to correct the error, if this court should determine that there was only a mistake in calculation, so that not quite sufficient has been written off from the verdict, this should be corrected by proper direction of the court, and should not result in a new trial. We think that, under the circumstances of this case, as above stated, this should be done. We accordingly direct that the correct amount to cover possible interest found by the jury, namely, $207.40, instead of $190.29, should be written off from the verdict and judgment, and if the plaintiff or his counsel shall do this within 30 days from the filing of the remittitur from this court in the office of the clerk of the superior court, the motion for new trial, as to this ground, will be overruled, and the verdict allowed to stand. If, within the time specified, the defendant in error or his counsel should fail to file with the clerk of the superior court a remission of the excess above stated, so as to write off from the verdict and judgment $207.40 instead of $190.29, a new trial will be granted. See Civil Code, § 5498.

For cases in which erroneous findings have been cured by writing off certain amounts which were definitely ascertainable, sometimes in damages and sometimes otherwise, see the following:

*Teasley* v. *Bradley*, 120 *Ga.* 373 (47 S. E.. 925); *Brinson* v. *Reid*, 107 *Ga.* 250 (33 S. E. 31); *Buice* v. *McCrary*, 94 *Ga.* 418 (20 S. E. 632); *Rockdale Paper Mills* v. *Stevens*, 65 *Ga.* 380; *Hendry* v. *Hurst*, 22 *Ga.* 312; *Steadman* v. *Simmons*, 39 *Ga.* 591; *Mayor &c. of Brunswick* v. *Tucker*, 103 *Ga.* 233 (29 S. E. 701); *Sparks* v. *Ætna Ins. Co.*, 62 *Ga.* 198; *Giles* v. *Spinks*, 64 *Ga.* 205.

2. It is contended that the verdict is contrary to the evidence. We are not called upon to decide what we might have done had we been on the jury; but we have before us the verdict which the jury found and its approval by the trial judge (subject to the correction above referred to), and we can not say that there was not sufficient evidence to warrant the jury in such finding. There were two principal points of contest: (1) Whether there was any evidence from vhich the jury could find that the defendant was negligent; and (2) whether the plaintiff was violating the rules of the company at the time when he was injured, and was thereby debarred from recovery. In view of the plaintiff's testimony as to the nature of his employment, the sudden call upon him by the company to do other work than that in which he was customarily engaged, the character, location, and circumstances surrounding the spike or nail by which he was injured, his testimony as to the duty which called him to go forward while engaged in connection with the running of the train, and the reasons therefor, and the manner in which the car was loaded, we can not say that the jury were not authorized, in view of the facts before them and such reasonable deductions as they might make therefrom, to find that the defendant was negligent, and that the plaintiff was not guilty of such violation of duty as precluded him from recovering. In regard to the claim that he was violating the rules of the company, it did not appear that the particular rule mainly relied upon had ever been promulgated to him. He stated, that, some eight or ten years prior to the trial, he had been in the employment of the railroad company and had been given a rule-book similar in general appearance to the one which was exhibited to him in the trial, but he could not say whether they were the same, and that he had kept it for a short time; that it had then been taken from him and some changes made in it, and it had never been returned to him;

and that he did not know anything about the rule in question; though he did also say that he might have heard of it and might have forgotten it. No evidence was introduced to show that in fact the rule in question was ever delivered to him, or that information concerning it was ever given him.

According to the plaintiff's evidence, he was injured while in the discharge of his duties in connection with the operation of the train while running; he was without fault; and the nail or spike, which ought not to have been there, caused the injury. From the situation, shape, and fixed condition of the spike, the jury had a right to draw inferences as to how it came to be there or in that position, whether from the jostling of the car itself or from carelessness in loading, and failure to properly inspect, or whether it was there without negligence on the part of the defendant or its employees. These were matters for legitimate inference by the jury, and we can not declare as matter of law that they decided wrongly. The Civil Code, § 5157, declares, that, "In arriving at a verdict, the jury from facts proven, and sometimes from the absence of counter-evidence, may infer the existence of other facts reasonably and logically consequent on those proved." It would be useless to cite and discuss decisions of the courts of other States, where the general rule governing the liability of a master to an injured servant applies to railway employees. In this State the code contains the distinct declaration that "if the person injured is himself an employee of the company, and the damage was caused by another employee, and without fault or negligence on the part of the person injured, his employment by the company shall be no bar to the recovery." Civil Code, § 2323. Take, for example, Fuller *v.* Ann Arbor R. Co., 141 Mich. 66 (104 N. W. 414). A car was being repaired, not operated. The repairer threw a wrench upon it, which struck a torpedo and exploded it. The court said: "It [the torpedo] may have been placed there by a fellow-servant, or by a trespasser only a short time before plaintiff's injury. If so, it is clear that no liability would be imposed upon defendant." In Georgia, if it had been negligently placed there by a fellow-servant while working for the company, that fact would not have relieved the company. In Michigan it has been held that a railroad employee can not recover on account of an injury re-

sulting from the negligence of a fellow-servant. Enright *v.* Toledo R. Co., 93 Mich. 409 (53 N. W. 536). It has been declared in many cases in this State, where an employee of a railroad company sued for a personal injury, that the company or its other employees must have been at fault, and the injured employee without fault; but that a prima facie case was made out if either of those things was shown, a presumption of the other thereupon arising. If it should be said that, upon proof that the plaintiff was without fault, he stands like a passenger, or a third party similarly situated, other than an employee, and the doctrine of presumption of negligence only arises in favor of such a person where the injury is caused by the "running" of the locomotives, or cars, or other machinery of such company, or where there is some wrongful act of an employee of the company which was the immediate cause of the damages, the expression "by the running of the locomotives, or cars, will not be given a narrow and contracted meaning, but will be reasonably construed in the light of the legislative purpose and intention as evidenced by the entire statute. To illustrate: A train pulls up to a station and stops. A passenger in alighting is injured because the step of the car is broken or wanting. Technically speaking, the train is not "running," in the sense of being in actual motion, at the instant when the passenger is alighting. But he is injured by the running of the train in the sense that it is being operated, and that, as a part of such operation, the company must allow passengers proper opportunities for alighting. Would it be contended that the presumption declared by the Civil Code, § 2321, would not arise in favor of a passenger in such a case? Or suppose a conductor or brakeman, in the discharge of his duties, calls a station, the train stops in the dark, a passenger endeavors to leave it, and steps into a gully underneath where the platform stands, would it be said that no presumption arose because the train was not in motion—not "running" in that sense, or because no employee of the company pushed or threw him off? Or again, suppose a passenger, walking along the aisle of a car, or in sitting down, should be wounded by a long spike projecting from the seat, or from the floor, or should be caused to trip and fall because of a hole in the floor, or of a piece of wood or iron projecting from it, would any one contend that no presumption arose in the passen-

6

ger's favor, because the car was not at the moment in motion, or because no employee exercised any direct force upon him at the instant of the injury? If it should be conceded, therefore, that upon proof by an injured employee on a train that he was free from fault, he stands in the position of a passenger relatively to the presumption of negligence against the company, we can not admit that, if a passenger had had the right to be and walk where this employee was, no presumption would have arisen in his favor when injured by a spike firmly fixed in a dangerous position in the load of the car. The cases of *Lee* v. *Central of Ga. R. Co.,* 86 *Ga.* 232 (12 S. E. 307), *East Tenn. etc. Ry. Co.* v. *Reynolds,* 93 *Ga.* 570 (20 S. E. 70), *Rome R. Co.* v. *Thompson,* 101 *Ga.* 26 (28 S. E. 429), and *Savannah etc. Ry. Co.* v. *Flaherty,* 110 *Ga.* 335 (35 S. E. 677), do not conflict with this position. In the *Lee* case in 86 *Ga.,* a brakeman stepped on a pile of ashes and dross lying beside the track, arising from raking out the furnaces of engines, and his foot turned on a clinker of unusual size. In cleaning out the furnaces of engines, there was no negligence in withdrawing clinkers, and diligence did not require absolute freedom from clinkers along the track. Nor was there any reason shown why the plaintiff stepped on the clinker. In the case of the *East Tennessee Railway Company* in 93 *Ga.,* a conductor walked along the track to flag an approaching train, and slipped on a cross-tie on the edge of which was a small bit of decayed sap. It was held that the purpose of cross-ties was not to make a way for employees to walk upon, and that there was no emergency, or other fact which showed negligence on the part of the company relatively to the plaintiff. In the *Rome Railroad Company* case in 101 *Ga.,* it is stated that the person killed was not an employee of the defendant, and was injured at the platform of a railroad scale. In *Flaherty's* case, 110 *Ga.,* the injury arose from a sloping and greasy place in a depot platform, on which a person slipped. Some of the reasoning there goes quite far, but it differs from this case. It was said there, " Nothing was running." Here the train was running, and the plaintiff was engaged as conductor in taking part in causing it to run properly, so as not to cause an accident to it. As to the expression "the running" of cars, in section 2321 of the code, see *Ga. Ry. & Elec. Co.* v. *Reeves,* 123 *Ga.* 697, 705 (51 S. E. 610). In the *Flaherty* case

no reference was made to that of *Central R. Co.* v. *Gleason &*
*Harmon,* 69 *Ga.* 200, 203, 72 *Ga.* 742.

In *East Tennessee Ry. Co.* v. *Suddeth,* 86 *Ga.* 388 (12 S. E.
682), where an employee was passing over a car loaded with
ore, and a piece of the ore on which he stepped turned under his
foot, it was said that "while the general rule is that the company
must explain, where the fact of injury is proved and the plaintiff
shows himself free from fault," yet the plaintiff's own evidence
in that case showed that there was no fault, but a mere accident.
The case at bar differs from that one, in that the load of ore was
a legitimate and proper thing to have on the car. Here the
spike was a dangerous thing, and no part of the legitimate load.
The principle which is there recognized applies here, but the plain-
tiff's evidence did not in this case exculpate the defendant. If
the jury believed that the dangerous spike or nail (a forty-penny,
nail) was placed in this dangerous position in loading, then
clearly they could have found that there was negligence in the
loading, or a want of proper inspection. 26 Cyc. 1124 (b).
If they believed that perhaps the spike or nail was not so placed
during the process of loading, but was caused to rear up into
a dangerous position by the jolting of the car in running, at some
time after the loading, then the danger was caused by the "run-
ning" of the train in the most literal sense of the word. It is
not the question whether some other possibility might be sur-
mised. The question now under consideration is whether the jury
could not lawfully have found as they did, and whether the
presiding judge erred in approving their finding. If the case
be considered relatively to the inferences which the jury might
legitimately draw, or from the standpoint of presumption, the
circumstances called for explanation from the defendant. None was
forthcoming as to the diligence of the company or its other em-
ployees, and the verdict of the jury can not be said to be without
evidence to support it.

    *Judgment affirmed, on condition. All the Justices concur, ex-*
*cept Atkinson, J., dissenting, and Holden, J., disqualified.*

    ATKINSON, J. I concur in the ruling announced in the first
headnote and first division of the opinion, but dissent from the
ruling expressed in the second headnote and second division of
the opinion, upon the reasoning and authorities following. One

of the grounds of the motion for new trial was that the verdict was contrary to evidence. Under the peculiar facts of the case it is important first to inquire upon whom the burden of proof rested, after proof of the injury, to show that the defendant was negligent in the manner charged in the declaration. Under the ruling in *Atlanta & Richmond Air-Line Ry. Co.* v. *Campbell,* 56 *Ga.* 586, and cases therein cited, and many cases which followed, an employee of a railroad company may recover damages resulting from injuries received by the negligence of the master or by the negligence of a fellow-servant while engaged in the work of the master, provided the person injured is free from fault, and his dereliction of duty did not in any manner contribute to the cause of the injury. So also, where an employee of a railroad company sues the company for damages to his person or property, if on the trial it should be affirmatively shown that the damage was done by the running of the locomotives, or cars, or other machinery of the company, or that the damage was done by any person in the employment and service of the company, and that there was no dereliction of duty by the injured employee which in any manner contributed to cause the injury, so that it could be said that the employee was free from fault, such affirmative proof of freedom from fault would place the employee upon an equal footing with other persons similarly situated, who were not employees, and, taken in connection with affirmative proof that the injury was done by the running of locomotives, cars, or other machinery of the company, or by an employee of the company while engaged in the service for which he was employed, would raise a presumption that the injury resulted from negligence chargeable to the company. Upon this general subject see the following cases: *Campbell* v. *Atlanta R. Co.,* 53 *Ga.* 488; *Atlanta R. Co.* v. *Campbell,* 56 *Ga.* 586; *Central R. Co.* v. *Kenney,* 58 *Ga.* 485, 489; *Central R. Co.* v. *Sears,* 59 *Ga.* 437; *Atlanta R. Co.* v. *Webb,* 61 *Ga.* 586; *Central R. Co.* v. *Freeman,* 66 *Ga.* 174; *Gassaway* v. *Ga. So. Ry. Co.,* 69 *Ga.* 347; *Ga. R. Co.* v. *Bryans,* 77 *Ga.* 429; *Western R. Co.* v. *Vandiver,* 85 *Ga.* 470 (11 S. E. 781); *Johnson* v. *Richmond R. Co.,* 95 *Ga.* 685 (22 S. E. 694); *Augusta R. Co.* v. *McDade,* 105 *Ga.* 134 (5), 137-8 (31 S. E. 420); *Western R. Co.* v. *Jackson,* 113 *Ga.* 355 (38 S. E. 820). But while upon affirmative proof that the employee

was free from fault, as expressed above, the employee would be upon an equal footing in regard to the law of presumption with persons similarly situated, other than employees, there is no reason or principle under which it could be said that he would stand upon a better footing. If the employee would not stand upon a better footing, it follows that, upon proof of freedom from fault by the employee, no presumption of negligence would arise against the company under circumstances where the presumption would not arise where the person injured was not an employee. With regard to suits by others than employees, the law which raises a presumption of negligence against railroad companies upon proof of the injury is found in the Civil Code, § 2321, and the presumption there referred to is now frequently called the "statutory presumption." The code section just referred to provides as follows: "A railroad company shall be liable for any damage done to persons, stock, or other property, by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." To the extent that the section raises a presumption of negligence against the defendant in cases other than those of injuries to passengers, it is in derogation of the common law and must be strictly construed. *Atlanta Railway Co.* v. *Johnson,* 120 *Ga.* 908, 912 (48 S. E. 389). Under this law the presumption of negligence charged in the petition will arise upon proof of injury done in either of two ways: (*a*) by the running of the locomotives, cars, or other machinery of the defendant company; (*b*) or by an employee of the defendant company while engaged in the service contemplated by his employment. No other conditions are named under which the statutory presumption of negligence against the defendant will arise. An examination of all the cases (unless the cases of *Central Railroad Co.* v. *Gleason & Harmon,* 69 *Ga.* 200, 72 *Ga.* 742, hereinafter referred to, held to the contrary) will fail to disclose one where, upon proof of the injury, negligence has been presumed against the railroad company, unless the injury was caused in one of the two ways just mentioned. If this be kept in mind while reading

the various cases on the subject, it will save confusion. In the case at bar it affirmatively appears that the injury was not done 'by any employee of the defendant company, and a presumption of negligence dependent upon that source may be eliminated from further consideration. We need only inquire whether the injury was done by the running of the locomotives, cars, or other machinery of the defendant company. This court has not decided any case involving this question where the facts are exactly similar to those shown by the present record; but we may allude to a few cases on the general subject. In the case of *Ga. R. Co.* v. *Nelms,* 83 *Ga.* 70 (9 S. E. 1049, 20 Am. St. R. 308), it was alleged, that the plaintiff was employed by the defendant to assist in changing the grade of its track, and that the defendant had furnished him and other employees with certain tools and implements with which to take up the iron rails and refasten them to the cross-ties; that hammers of certain weights, shapes, purity of steel, and of the proper temper were furnished them in order that the work should be done with safety and dispatch; that petitioner was furnished with a hammer to drive spikes; that he believed he had been furnished with one of the proper temper, etc., and that knowing nothing to the contrary he entered upon such work under the direction and control of the company's officers, and while so engaged in driving spikes he was injured by the breaking of the hammer so furnished him, said breaking causing pieces thereof to fly off with great force and violence, one of which struck the plaintiff and injured him. In discussing whether or not the statutory presumption of negligence provided for in the Civil Code, § 2321, arose against the defendant, the court, among other things, on page 74, said: "We do not think that a hammer thus used comes under the term 'machinery' used in the above section. . . The plaintiff not being injured in any of the ways pointed out in the above section, either by the running of the cars or machinery, or by any other employee of the company, there was no presumption in his favor or against the railroad company, as set forth in the above section. This case, therefore, is not governed by that section, but falls under the general law of master and servant. Under that law, the burden was upon the plaintiff to show negligence on the part of the defendant in supplying him with a defective hammer." In the

case of *Savannah Ry. Co.* v. *Flaherty,* 110 *Ga.* 335 (35 S. E.
677), it was alleged that the defendant, for the purpose of rolling
trucks across its passenger-depot in the city of Savannah, the
floor of which was elevated above the railway tracks, had con-
structed a crossing at each end of which was a steep incline
from the level of the floor to that of the tracks. A train for the
reception of passengers was so placed in the depot that the steps
of the ladies' car thereto attached were immediately over the
incline at one end of this crossing. The sloping edge, which
was slippery with grease or other substance, would not have been
visible to a casual observer, even under favorable conditions, and,
on the evening petitioner was injured, it was a dark and rainy
afternoon, and the electric lights were lit in the city. The plain-
tiff purchased a ticket and undertook to enter the ladies' car
as a passenger. In the exercise of due diligence and being
wholly unaware of the dangerous trap, her right foot encountered
the unexpected slope at the moment she was raising her left
foot to place it on the step of the car. Her right foot slipped from
under her and she fell, sustaining injuries. The company was
alleged to have been negligent in stopping the car at the point
indicated, without covering the gangway or edge of the platform.
In discussing the question as to whether the provisions of Civil
Code, § 2321, were applicable, after quoting that section, it was
said, commencing on page. 336: " The plaintiff certainly was not
injured by the ' running of the •locomotives, or cars, or other
machinery' of the company. Everything it owned or possessed
having any connection with her fall was at a dead standstill.
Nothing was ' running.' Was the damage to her ' done by any
person in the employment and service' of the defendant? We
are prepared to say with the utmost confidence it was not. Grant-
ing that the incline was improperly constructed or kept, and
that the placing of the steps of the car over the slope of the
incline was, relatively to those invited to board the train in this
position, a negligent act, it still can not be said that any particu-
lar employee of the company did any direct wrong to the plaintiff.
. . The language of the section under consideration is plain
and unambiguous, and it seems clear that, in order to render its
provisions applicable to a given case, it must affirmatively appear,
as the law itself declares, that the injury complained of resulted

either from 'the running of the locomotives, or cars, or other machinery' of the company, or from some wrongful act of an employee which itself was the immediate cause of the damage to the person injured. . . In *Rome R. Co.* v. *Thompson,* 101 *Ga.* 26 (28 S. E. 429), it appeared that 'the plaintiff's husband lost his life through a defect in a platform which had been erected as a part of a contrivance for weighing cars,' and it was held that a charge to the effect that a presumption of negligence arose against the defendant company was 'entirely inapplicable to the facts.' Counsel for the defendant in error cited numerous cases in which this court has held that the presumption of negligence arose against a railroad company. We have carefully examined all of them, and find that, in every instance, the injury resulted from the running of a locomotive, car, or train, or from some act of an employee which directly and immediately caused the damage. The expression, 'Where an injury is committed by a railroad, the presumption is always against the road,' occurring in the third headnote to the case of *Central Railroad Co.* v. *Brinson,* 64 *Ga.* 475, and the remark of Judge Crawford on page 478, that 'Railroad companies are liable for injuries done by them to persons and to property, and whenever one has been shown to have been committed, the presumption of the law is against them,' must be understood and interpreted with reference to the facts of that particular case, which was an action to recover damages for the careless running of a train, whereby the plaintiff lost his foot." Among other cases in which it is held that the statutory presumption did not arise under the particular facts involved are the following: *Atlantic & Birmingham R. Co.* v. *Reynolds,* 117 *Ga.* 47 (43 S. E. 456) ; *Atlanta R. Co.* v. *Johnson,* 120 *Ga.* 912 (48 S. E. 389) ; *Davis* v. *Ga. R. Co.,* 110 *Ga.* 305 (34 S. E. 1001). See also *Talmadge* v. *Central Ry. Co.,* 125 *Ga.* 400 (54 S. E. 128) ; *Southern Ry. Co.* v. *Morrison,* 105 *Ga.* 543 (31 S. E. 564) ; *Georgia Ry. & Electric Co.* v. *McAllister,* 126 *Ga.* 447 (54 S. E. 957, 7 L. R. A. (N. S.) 1177). The rulings in the cases cited support the doctrine that the statutory presumption of negligence against the railroad company must be founded upon proof that the damage was done in one of the two ways pointed out in the statute, to which reference has already been made, and that the statute must be strictly construed.

Looking to the facts disclosed by the admissions in the pleadings and by the evidence in the present case, it will be seen that the nail which penetrated the plaintiff's foot was no part of the freight which was being carried, nor was it any part of the defendant's machinery or equipment. This much affirmatively appears from the allegations of the petition. The nail was an object entirely foreign to the defendant's machinery and business, and was merely present with certain piping that was being carried on defendant's car, and its position before the moment of contact with plaintiff's foot has never been explained. The car was in motion, but there was no fact suggesting even remotely that the motion of the car was unusual, or in any manner caused the nail to penetrate the plaintiff's foot. On this point the plaintiff held the burden of proof; and there was no fact in evidence from which an inference could be drawn that the motion of the car caused the injury, rather than that it resulted from some other cause, or to show that the injury would not have resulted if the car had been standing still. The wound was caused by stepping on the nail, and the negligence alleged was in allowing the nail to be at that place. Injury caused by motion of the car does not appear to have been in the mind of the plaintiff, either in drafting his petition or in introducing his evidence. There was no other fact tending to show that the damage was done by the running and operation of the defendant's locomotives, cars, or other machinery. In dealing with the word "running," as employed in this connection, the case of *Georgia Ry. Co. v. Reeves,* 123 *Ga.* 697 (9), (51 S. E. 610) has not been overlooked. In that case it was said (pp. 705-6): "It would be too narrow and restricted a view to hold that if while passengers are in transit upon a car it was stopped for one or more of them to alight, or to be transferred to another car, and the injury resulted to one of them by reason of turning out the lights in the car, or causing it to jerk while the passenger was alighting, this was not done by the running of the car, or by a person in the service of the company, if such person put out the light or caused the jerk. Such an occurrence would be a part of the actual transit. The running of the car, as used in the section of the code above quoted, is not confined to a mere collision with a person on the track. An unnecessary jerk causing an injury to a passenger while

alighting is a part of the running, within the reasoning and spirit of the statute. Moreover, if, while the passenger is in the act of alighting, an employee of the company turns out the lights or causes the car to jerk, and as a result the passenger is injured, this would be damage done by a person in the employment and service of the company, within the meaning of the statute." That case is obviously distinguishable upon its facts from the case now under consideration; for the plaintiff in the present case was not a passenger, and he was not injured by a sudden jerk of the car, nor on account of a positive act of a fellow-servant in putting out a light while he was being transferred from one car to another; but the cause of his injury was of a different character altogether, as we have already seen. But the reasoning of the court above quoted clearly recognizes the rule that the provisions of the Civil Code, § 2321, will not apply unless the injury was caused in one of the two ways specified in the statute, and to which reference has hereinbefore been made.

The rulings made in *Central Railroad Co.* v. *Gleason & Harmon,* supra, are not authority for the proposition that the evidence in this case was sufficient to raise the statutory presumption of negligence against the defendant. The facts are different, and upon this point neither of the two cases (both relating to the same injury) has ever been followed, but the rulings of this court in subsequent cases have consistently been contrary to the broad language used in those decisions tending to hold that in a suit against a railroad company the statutory presumption would be raised by proof of the injury, although the damage was not done in either of the two ways mentioned in the statute. The records of file in this court disclose that the injury complained of in the two cases cited resulted from a failure of defendant to maintain in proper condition a driveway which had been provided for the use of vehicles driven thereon by persons for the purpose of receiving freight from the railroad company. On account of the defective condition of the way the wheels of plaintiff's wagon ran off of the platform, and one of the mules got his foot fastened between one of the defendant's iron rails and the platform, and in an effort by the driver, assisted by certain employees of the defendant known as the work gang, to extricate the mule, the animal was injured. The condition of the way and the

theory upon which the plaintiff brought his suit were such that it was not necessary to a recovery by the plaintiff to invoke the aid of the statutory presumption. Under the pleadings the provisions of the Civil Code, § 2321, were entirely inapplicable. *Ga. Ry. & Electric Co.* v. *McAllister,* supra. The ruling by this court should have been no broader than the pleadings and evidence required. It may be that the court was led into the use of the broad expression above alluded to, by evidence which showed that defendant's servants were helping to extricate the mule when he was injured. If the theory under which the court proceeded was that the mule was injured by the servants of the defendant, the broad language used would be a recognition rather than a denial of the rule now contended for. In the present case the majority of the court do not unqualifiedly recognize the ruling in either of the two cases mentioned as authority for the proposition that the statutory presumption will arise against a railroad company upon proof of injury, regardless of whether the damage was done by the running of the locomotives, cars, etc., or by any person in the employment of the company. It is clear that the evidence does not disclose that the injury resulted from the running of the locomotives, cars, or other machinery of the defendant, in any sense, or from anything done by an employee of the defendant while engaged in the service for which he was employed. It follows, therefore, that the evidence was not sufficient to raise the statutory presumption against the defendant, even if the plaintiff had been other than an employee; and, being an employee, that it was not sufficient, even though, in addition to proof of the injury, the evidence was sufficient to authorize the jury to find that the plaintiff was free from fault. In other words, conceding that the plaintiff was on an equal footing with persons similarly situated, other than employees, the facts disclosing the manner in which he was injured were not of such character as to raise the statutory presumption of negligence against the defendant.

Having seen that the evidence was not of such character as to raise the statutory presumption of negligence against the defendant, we may next consider the evidence for the purpose of ascertaining whether it was of such character as would be sufficient under the law to support the burden of proving affirma-

tively that the defendant was negligent, and to authorize a verdict in favor of the plaintiff. It affirmatively appears from the allegations of the petition that the nail had no relation to the freight that was being carried. There was no evidence to account for the presence of the nail on the car, or to show how long it had been there, or to explain how it came in a position to inflict the injury. There is no more reason to assume that its presence was attributable to the act of an employee while engaged in loading the car than to the act of a volunteer who may have casually thrown it on the car, or to some other agency for whose act the defendant would not be responsible.

It was contended that the defendant did not furnish a safe place of work, and was negligent in allowing this nail to be and remain at a place where the plaintiff and other employees were obliged to pass in the performance of duty. But it was not shown that the defendant or its servants knew of the presence of the nail, or had failed to exercise ordinary care in inspecting the car, or that the nail was in such a position, and had remained so for such length of time as would have rendered it, and the danger therefrom, discoverable by the exercise of ordinary care in the matter of inspection. As to all these matters the evidence was silent; and as the law raises no presumption with reference to them against the defendant, the burden of proof, so far as they are pertinent, remains on the plaintiff.

The accident was unusual, and it is not made to appear how, in the exercise of ordinary care, the defendant should have anticipated and provided against it. On the subject of accidents somewhat similar to this it will not be out of place to notice what has been said in a few cases: In *East Tenn. Ry. Co.* v. *Suddeth,* 86 *Ga.* 388 (12 S. E. 682), it was held that the fact "that the employee, whilst passing in the course of his duty over a car loaded with ore, stepped upon a piece of the ore, which turned under his foot, whereby he was precipitated from the car and severely injured, is evidence of injury by accident rather than by any fault or negligence of the company." In the opinion, after discussing the evidence relative to the loading of the car and concluding that it was insufficient to show negligence on the part of the defendant, Bleckley, C. J., continued: "Granting that the plaintiff was free from fault in all he did, his own testimony

and that of his witness screened the company by pointing out mere accident rather than the fault of any one as the cause of the injury. While the general rule is that 'the company must explain where the fact of injury is proved and the plaintiff shows himself free from fault, yet where he is the only employee who directly participates in the act resulting in the injury, and where the evidence which goes to make out his case points distinctly to accident, rather than to any negligence whatever on the part of the company or its employees, it would seem unreasonable to apply the general rule. Why should the company be required to prove itself free from fault, when the evidence for the plaintiff fails even to suggest any fault whatever against it? . . His fall was occasioned by the turning of one piece of the ore under his foot. Prima facie, such an occurrence is a mere accident. It was an accident that he stepped on that particular piece of ore, and an accident that it turned under his foot. Such casualties, it seems to us, appertain to the risk of the service in which the plaintiff was engaged." In *Lee* v. *Central R. Co.*, 86 *Ga.* 232 (12 S. E. 307), the employee was injured by stepping from a moving engine upon a clinker lying beside the track, and it was ruled that "the plaintiff's injury was simply a misfortune, the incident of his employment and of the risk consequent thereon." In *East Tenn. Ry. Co.* v. *Reynolds*, 93 *Ga.* 570 (20 S. E. 70), the employee was in the act of crossing a trestle to flag an approaching train, and was injured by a fall occasioned by stepping upon a decayed cross-tie. The injury was held to be "a mere casualty incident to the business in which the plaintiff was engaged, and he was not entitled to recover." And inasmuch as the statutory presumption provided for in the Civil Code, § 2321, is not involved, we may also look to decisions from other States where there is no such presumption and where it has been held that the plaintiff could not recover, because it was not affirmatively shown that the injury was caused by the negligence of the defendant. In *Fuller* v. Ann Arbor R. Co., 141 Mich. 66-8 (104 N. W. 414, 18 Am. Neg. Rep. 489), it was held that "where an employee, while repairing a car for the company, threw on the car a wrench that struck a torpedo which exploded and injured him, and there was no evidence as to how it happened to be on the car, or who put it there, or how long it had been there, though

he recognized it as one used by the company, there was no actionable negligence shown on the part of the railroad company in failing to provide a safe place to work, and the court should have directed a verdict for the company." The opinion by Carpenter, J., is in part as follows: "If defendant is responsible for plaintiff's injuries, it is so responsible because it failed in the duty it owed plaintiff to furnish him a safe place in which to work. Defendant's obligation, as an employer, to furnish to plaintiff, as an employee, a safe place in which to work is an obligation, not of insurance, as urged by plaintiff's counsel, but of diligence. This obligation was performed if defendant exercised due care. Defendant is not liable, therefore, unless it was guilty of some neglect. It is not liable unless the presence of the torpedo on the car resulted from defendant's negligence. There is no evidence of this negligence, unless that negligence may be inferred from the fact that the torpedo was on the car. Of course, it is possible that the torpedo may have been placed on the car under such circumstances as to make the conduct of defendant in failing to remove it negligent. There is nothing, however, to indicate this. It may have been placed there by a fellow-servant, or by a tres-passer only a short time before plaintiff's injury. If so, it is clear that no liability would be imposed upon defendant. It is obvious, therefore, that the verdict in this case rested upon nothing but bare conjecture. A verdict should have been rendered in defendant's favor, unless a jury may, without any evidence whatever, guess which one of several possible causes produced a certain result. This, we have held, they can not do. See Marquette, Houghton & Ontonagon R. Co. *v.* Kirkwood, 45 Mich. 51, 7 N. W. Rep. 209, 40 Am. Rep. 453; Smith *v.* Hockenberry, 138 Mich. 129 (101 N. W. Rep. 207)." In the present case the majority appear to hold that the reasoning of Carpenter, J., just quoted, is not applicable, because the rule prevails in Michigan that a servant can not recover for an injury caused by the negligence of a fellow-servant, there being no such rule in this State where the suit is against a railroad company and the servant injured is himself free from fault. But a careful reading of the opinion quoted will show that this difference in the laws of the two States becomes immaterial. The substantial point ruled by the Supreme Court of Michigan was that the evidence failed to show affirma-

tively that the torpedo was placed on the car under such conditions as would show negligence upon the part of the defendant, or by some person for whose negligence the defendant would be liable to the plaintiff. As the burden of proof was upon the plaintiff, under the common-law rule, to prove the negligence charged against the defendant, the burden was not supported so long as the evidence left it inferable that the torpedo may have been placed on the car by a trespasser or by a fellow-servant, the defendant not being responsible for the act of either.

In McGrath v. St. Louis Transit Co., 197 Mo. 97 (94 N. W. 872), it was ruled: "Where, in an action for personal injuries, the facts are such that an inference that the accident was due to a cause other than the negligence of the defendant could be drawn as reasonably as an inference that the accident resulted from the defendant's negligence, the doctrine of res ipsa loquitur does not apply, and the plaintiff can not rely upon mere proof of the facts and circumstances, and require defendant to show that he was not negligent." To the same effect see 29 Cyc. 625; 3 Elliott on Railroads (2d ed.), §1309. Considering the evidence as a whole, the plaintiff did not support the burden of showing affirmatively that the negligence of the defendant caused his injury; and the court should have granted a new trial on the ground that the verdict was not supported by the evidence.