JENNIE M. SUMNER, plaintiff in error, *vs.* BRYAN, DILLINGHAM & COMPANY *et al.*, defendants in error.

1. The verdict in this case was neither contrary to the principles of justice and equity, nor to the evidence. (R )

2. The court is not required to inform a jury whence he derives the law, whether from Pennsylvania or Georgia; it is sufficient if the law he gives them in charge be the law of the case.

3. A deed though it may be defectively executed and improperly recorded, if admitted without objection to go to the jury, and especially if its execution be admitted in the pleadings, is evidence; and the court does not err who declines to charge the jury as to the alleged defective execution or improper record.

4. Where the wife unites with the husband in the execution of a mortgage, or a deed which becomes by agreement an equitable mortgage, to secure a debt by the husband to his indorser, such indorser is not estopped by accepting such deed, from denying title in the wife to the mortgaged land.

5. Even if the wife's money purchased the land, and the indorser for the husband, credited him and indorsed for him on the faith that the land was his, without any notice, actual or constructive, that her money paid for it, and the husband mortgage it to the indorser, after the record of the voluntary conveyance, who has paid the note since that record, to provide for its repayment to him, such mortgage is good against any equity of the wife and will be enforced against her. The record of the deed, voluntary on its face, furnishes no constructive notice of purchase money paid by her, nor does it put the indorser upon inquiry about the purchase money so as to affect him with notice.

6. A deed from the husband to the wife for love and affection, is a voluntary settlement, within section 1778 of the Code, and must be recorded within three months to vest title in the wife against the claim of a surety who indorses for the husband before the date of the record.

7. If the husband mortgage the property so deeded, after the record, to secure a debt due his surety, who indorsed for him on the faith that the land was his prior to the record, such record not being within the three months required by law, the mortgage is good, and will bind the land in equity against the wife's title by voluntary deed.

Husband and wife. Voluntary settlement. Registry. Mortgage. Indorsement. Charge of Court. Practice in the Superior Court. Estoppel. Before LOGAN E. BLECKLEY, ESQ., Judge *pro hac vice.* Fulton Superior Court. March Term, 1875.

Reported in the opinion.

ARNOLDS, for plaintiff in error.

PEEPLES & HOWELL, for defendants.

JACKSON, Judge.

This was a bill brought by Mrs. Sumner against Bryan, Dillingham & Company, all of the state of Pennsylvania at the time of the transactions hereinafter recited, and against George W. Adair, the agent of defendants, living in Fulton county, Georgia. The bill alleges that the husband of com-

plainant purchased certain lands in Fulton county, Georgia, with her money, and on the 29th of September took a deed to himself for the lands so purchased; that on the next day he made a deed to her for the said lands, which is voluntary on its face, but was really for value, as the land was purchased with her money; that subsequently to the making of said deed to her, her husband became indebted to defendants in the sum of $2,500 00; that she was induced and persuaded to unite with her husband in giving a joint note in lieu of the $2,500 00, which defendants held against her husband, and to secure the same by executing with her husband certain deeds and agreements, amounting in law to an equitable mortgage; that defendants agreed that these deeds were to be retained in their possession and not to be recorded in Georgia, but in violation of the agreement they had been so recorded, and efforts were made through George W. Adair, real estate agent in Georgia, to sell the land and pay this debt; that she had been advised, and believed that the note and deed so given by her were void as against her, and she prayed the court so to decree. Two deeds to her husband to the lots of land in question, are exhibited to the bill, dated 29th of September, 1869, and recorded 5th of November, 1869, and the voluntary deed to herself from her husband, dated 30th of September, 1869, and recorded 11th of July, 1870; and the deed of her husband and herself to one of the firm of defendants, dated 18th of August, 1870, and recorded 16th of September, 1870; and an agreement between defendants and her husband, dated the same day, August 18th, 1870, turning this latter deed into a mortgage.

To this bill, which waived discovery, defendants filed an answer in the nature of a cross-bill under our statute, making the husband a party, and alleged therein that in November, 1863, the husband of complainant came to them in Pennsylvania and showed them specimens of gold quartz which he said was off certain lands he had bought in Georgia and that he desired to borrow of a bank located where they resided, $2,500 to complete the payment therefor; that he desired them to

indorse his paper for that sum to enable him to pay for the land; that he had dealt with them before, and after much importunity on his part and reluctance on theirs, they finally assented, and signed his paper as accommodation indorsers; that the note was renewed at sixty days, from time to time, until August 18th 1870, when the bank refused to renew further, and they paid the note; that the complainant and her husband made their joint note for the amount and executed the deed to the Georgia lands; that the agreement exhibited to complainant's bill did not change the character of the deed, having reference to another matter; they denied that complainant's money paid for the Georgia lands, and required her to sign with her husband to bar her right to dower, etc.; and taking issue on all the allegations in the bill, they prayed that the title to the land be confirmed in them by the decree of the court, or, if the papers amounted to a mortgage in the judgment of the court, that a decree of foreclosure be made and the land sold and they paid the said $2,500 00 with interest thereon. After evidence and argument, the case was submitted to the jury under the charge of the court, and a verdict rendered subjecting the land to defendant's claim and providing for its sale, etc. Complainant moved for a new trial on various grounds; the new trial was refused, and complainant excepted and brought the case here.

The facts are about these: James O. Allen, the brother-in-law of complainant, swore that Mrs. Sumner owned real estate in New York, at Buffalo; got $10,000 00 for it; her husband brought it to Georgia; this was in 1867; he then had no means of his own; Sumner loaned out this money and collected it as Mrs. Sumner's; the land was bought in 1868; payment was not made in this identical money; Mr. Sumner made the payment; at the time the deed was made $800 00 or $900 00 was unpaid. This is the substance of the oral evidence for complainant. No other witness was sworn by her. The defendants were all sworn and testified to the facts set out in their answer and cross-bill, and denied all notice of the wife's interest in the land, and testified that the husband, after the residence in Buf-

falo, as well as before, engaged in the oil business in Pennsylvania and broke, especially that he was so engaged in 1868 and 1869. It was also proven by them and by the notary in Pennsylvania, that the wife voluntarily made the deed to defendants with her husband, and gave no notice of any interest she had in it.

1. The first and second grounds of the motion for the new trial are, that the verdict is contrary to the principles of justice and equity, and decidedly and strongly against the weight of the evidence. We do not think so. The only evidence going to show that plaintiff's money paid for the land is that of a brother-in-law, nor does that evidence show it conclusively. It simply shows that the husband had previously obtained money belonging to her arising from the sale of lands of hers at the north, but does not show that this money or its proceeds actually went into this land. When the husband purchased the land in dispute he took title to himself, and the next day made a voluntary deed, for love and affection, to her. The presumption is overwhelming that he paid for it with funds he considered his own. If he did not, why not have the title made directly to her by the persons from whom he bought? Why have it made to him, and why does he make it to her the next day, not for value, not because her money paid for it, but because he loved her, and she was his wife? To overcome so strong a presumption as this arising from the face of the papers, the evidence should be very strong and clear to change the whole character of the papers and give them the effect of an entirely new contract. Especially in dealings between husband and wife should such evidence be clear and convincing; and the testimony of only one witness, and he a relative, to the effect that her husband had means of hers on hand a short time prior to the sale, is not clear and convincing to our minds. On the other hand, it is shown that the husband procured the indorsement of defendants to borrow from a bank in Pennsylvania money to pay for the land in dispute, and clouds of doubt, to say the least, are cast over the question whether the money he had before, purport-

ing to belong to her, was not his, and spent by him in Pennsylvania. Besides, it would have been quite easy for the husband and wife to have been sworn on the trial, and to have said on oath before the jury whose money it was, hers or his, and to have cleared away all the fog that encompassed the transaction. The record does not show that either of them was sworn, nor does it disclose any reason why they were not; and the presumption arising from the written proof is much strengthened by their lips thus voluntarily sealed and silent. The evidence, to our minds, is just the reverse of the allegation in the motion for the new trial. It strongly and decidedly supports the verdict. We are equally clear that the verdict is not against the principles of equity and justice. The entire transaction looks fraudulent on the part of complainant and her husband. The deeds to the husband are recorded within a month from their execution. His deed to his wife is pocketed, or in her private possession ·for ten months. In a few days after the deeds to himself are made and recorded, and with that to his wife concealed, he induces the defendants to indorse his paper to buy this land, or rather to pay for it. He actually induces them to think that he has bought lands abounding in the precious metal, and exhibits to them specimens of the ore. On the part of the husband the fraud is glaring. How is it with the wife? It is true, she does not go with the husband to borrow the money, nor is she present when the ore is exhibited, but voluntarily afterwards she unites in the deed to secure the defendants in the loan thus fraudulently obtained. She is silent then as to any title in herself; and participates in the impression which her husband has produced, that the land is his, and that the statement he has made all the while to the defendants is the truth. Thus uniting with him in the last act of this drama of deception, is it not probable that she was behind the curtain all the time? At all events, as she failed to appear before the jury on the trial and explain the part she took in the transaction, we cannot conclude that the principles of justice and equity. have been handled with much rudeness by the jury. Such

Sumner *vs.* Bryan, Dillingham & Company *et al.*

being our opinion on the merits of this cause, we should hesitate to grant a new trial, even if the court had committed errors in his charge to the jury; but the law requiring us to notice all the questions made in the record, let us look for a moment at these assignments of error.

2. We do not think that the court erred in refusing to charge "that the law of Georgia governs this case, as this deed or mortgage was made to be executed here." It is the duty of the court to give to the jury the law of the case, but he need not state from what source he derives it.

3. Nor do we think that the court erred in refusing to charge that "the deed or mortgage of Sumner and wife to Bryan, Dillingham & Company was only witnessed by one witness, and not executed as a deed out of the state of Georgia is required by the laws of Georgia." No objection was made to the admissibility of the deed, and complainant admitted its execution in her bill, and exhibited it thereto. She is estopped from having the charge requested by failing to object to the deed when tendered, and by admitting its execution in her pleadings.

4. We do not think the court erred in refusing to charge "that after Bryan, Dillingham & Company accepted the deed or mortgage from Mrs. Sumner, they were estopped from denying that the property belonged to her." The fact is, that she signed the deed with her husband; they accepted it from her husband, and, according to their version, she signed to bar her right of dower, etc. The case is not a naked case of acceptance of the deed from her. All the surroundings were proper circumstances to be considered by the jury, and the request, if charged in the language requested, would have misled them.

5. Nor do we think the court erred in refusing to charge "that the question of notice to Bryan, Dillingham & Company, of the deed of Mrs. Sumner, would not affect her rights if the land was paid for by Mrs. Sumner's money." The reverse of this request was ruled by this court in the cases of *Moye vs.*

*Waters,* 51 *Georgia,* 15, and *Bryan & Hunter vs. King, Ibid.,* 291.

6, 7. But the main question in the case and that most relied upon by the plaintiff in error, is whether the charge of the court to this effect be law; that though the wife's money purchased the land, yet if defendants, before there was any record of the husband's deed to her, credited the husband by indorsing for him on the faith of this property and afterwards paid the debt and took a mortgage from him on this land to secure its repayment, such a transaction would bind the land for this debt, though the payment by the indorsers and the mortgage took place after the record of the voluntary deed, provided defendants had no notice that it was the wife's money which paid for the land.    Section 1778 of our Code provides that a voluntary settlement by the husband on the wife must be recorded in three months, and in case of non-residents, in the county where the property is.    Otherwise the title shall not be good against purchaser, creditor or surety, who *bona fide,* and without notice, may become such before the actual recording of the same.    These defendants became sureties for the husband while this voluntary deed was in the pocket of the husband and before he had recorded it, and he had not recorded it until the three months allowed by law had expired. It is clear, therefore, that the wife got no title in this case as against these sureties by this voluntary deed, because of the failure to record the same within three months from the date of its execution.    But it is said that the deed was not voluntary, but for value.    To bind these defendants in such a case as that, it is necessary that they should have had notice that the deed was for value.    This principle was distinctly ruled by this court in *Moye vs. Waters,* before quoted.    There the court says that "the mere fact that property is purchased by one and paid for with the money of another, does not vest the title to such property as against third persons in the one whose money paid for it. * * * There must be notice of such an equity before it can avoid a title otherwise good."    True that was the case of a purchaser and this that of a mortgagee;

but the mortgagee stands on the same footing with the purchaser: 41 *Georgia Reports*, 202; 37 *Ibid.*, 392. The question then is, did these mortgagees have notice? They certainly had no actual notice; the proof shows none, and the jury found none. Nor did they have any constructive notice. Mark, the notice must be that the wife's money paid for the land. The record is of a voluntary deed—of a gift—with no hint in it that her money paid for the land. Therefore this record furnishes no constructive notice to the defendants; hence, there is no notice of any sort shown to them, and they are innocent mortgagees for value without notice. The jury so found and they found right. The court submitted the question of notice fairly to them in the charge complained of, and we have no fault to find either with the charge or the verdict. See, also, 7 *Georgia Reports*, 534; 10 *Ibid.*, 356; 16 `Ibid.*, 111, 112; 37 *Ibid.*, 332; 41 *Ibid.*, 202, *and* 51 *Ibid.*, 291.

Judgment affirmed.