### THE GEORGIA RAILROAD AND BANKING CO. *v.* NELMS.

The plaintiff having been employed by the railroad company to work in the construction of its track, and having sustained injuries by the breaking of a hammer in his hands furnished him by the company, and not having been injured by the running of the cars or machinery or by any other employé of the company, there was no presumption in his favor against the company under §3033 of the code; but his case falls under the general law of master and servant, under which the burden was upon him to show negligence on the part of the company in furnishing him with a defective hammer.

(a) The mere fact that this and other hammers were defective, and that the injury resulted therefrom, is not sufficient to authorize an inference of negligence on the part of the company in their purchase and selection.

(b) A hammer thus used is not included in the term "machinery" as used in §3033 of the code.

(c) The verdict was contrary to law and evidence.

July 31, 1889.

Railroads. Damages. Negligence. Presumptions. Master and servant. Words and phrases. New trial. Before Judge Marshall J. Clarke. Rockdale superior court. August term, 1888.

Reported in the decision.

J. B. Cumming, A. C. McCalla and Bryan Cumming, for plaintiff in error.

J. N. Glenn and A. M. Speer, contra.

Simmons, Justice.

Nelms brought his action against the Georgia Railroad and Banking Company for damages, in which he alleged, in substance, that he was employed by said company to assist it in changing the gauge of its track, and that the company furnished him and other employés with certain tools and implements with which to take up the iron rails and re-fasten them to the cross-ties; that hammers of certain shapes, weights, purity of steel and of the proper temper were required in order that such work should be done with safety and dispatch; that the petitioner was furnished with a hammer to drive spikes; that he believed he had been furnished with one of the proper temper, etc., and that knowing nothing to the contrary, he entered upon such work under the direction and control of said company's officers; and while so engaged in drawing spikes for said company, he was hurt, wounded and maimed by the breaking of the hammer so furnished him, said break-

ing causing pieces thereof to fly off with great force and violence, a piece striking the knee-joint of the petitioner, which penetrated and entered into said knee-joint, causing great pain, suffering, etc., and permanently injuring said knee; and a piece also striking him near the eye, embedding itself deep in the flesh near the eye-ball, which also gave him great pain and uneasiness, and endangered the loss of the sight of said eye. By reason whereof he was damaged, etc.

On the trial of the case the jury returned a verdict of $2,000; a motion was made for a new trial, which was overruled, and the defendant excepted.

The only ground of the motion for a new trial which it is necessary to notice is, the ground that the verdict was contrary to law and to the evidence. The evidence as shown in the record is, in substance, as follows: That the plaintiff was employed by the company to assist in changing the gauge of the railroad; that he worked under Brooks, who was the boss of the hands; that Brooks put him to work with a hammer to drive spikes, directing him to drive up the spikes where they were bent under the iron, and that he instructed him where he found a spike that was not down and was bent, to turn the small face of the hammer down, and put it on the head of the spike and drive it up. Thus the hand with whom he was working driving spikes used his hammer as a punch, putting its small face on the head of the spike, while the plaintiff with his hammer struck the upturned large face of the hammer which was held on the spike, and the spike was in this way driven up. In doing this a piece of his hammer burst off, a part of it striking him on the knee, and another piece on the right eye. All the other hands used their hammers in the same way. He was hurt about nine o'clock in the morning, having commenced work

about five o'clock. Other hammers broke besides his, but he did not know whether any broke before he was hurt or not; his hammer was a new one, and some of the others might have had old ones; he had never seen any hammers break before that time; he had worked on other railroads before, and had done this kind of work; he did not examine the hammer "any more than just going to take up a tool to work with"; he did not see anything the matter with it.

Two of the railroad hands who were at work on the same day, and at the same place with the plaintiff, testified for him. One of them testified as to pieces flying off of the hammer; he said they "got to flying like thunder"; "they were flying with force; they could hear them whistling"; that Brooks told them to "work up"; most of the hammers burst, their faces split or shelled off; some of them were old and some of them new hammers; nearly all of them broke; They battered on them "a right smart while" before they commenced bursting; the hammers looked to be all right when they picked them up, and looked to be first class hammers, and "they" said they were first class. The other witness testified as to several of the hammers breaking. He said he thought his was the first to break; that he could not hit the spikes with his hammer, and he got a new hammer out of the car which did not break; that he paid no attention to the hammers to see whether they were breaking or not; that if two pieces of steel struck together, and they were very hard, they were likely to break.

This case seems to have been tried under section 3033 of the code, which declares, that "a railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotives or cars or other machinery of such company, or for damage done by any person in the employment

and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." The judge charged the jury, in substance, that when the injury was shown, the presumption was against the railroad. The declaration alleges, and the evidence shows, that the injury sustained was caused by the breaking of a hammer in the hands of the plaintiff. We do not think that a hammer thus used comes under the term "machinery" used in the above section. The Supreme Court of Alabama, in the case of the Georgia Pacific Railway Co. v. Brooks, 4 South. Rep. 289, in discussing the statute of that State somewhat similar to our statute, says : "A hammer is a tool or instrument ordinarily used by one man in the performance of manual labor. It may be made an essential part of machinery when it is intended to be and is operated by means thereof; but when disconnected from any other mechanical appliances, and operated singly by muscular strength directly applied, such tool or instrument is not machinery in its most comprehensive signification, or within the meaning of the statute." The plaintiff not being injured in any of the ways pointed out in the above section, either by the running of the cars or machinery, or by any other employé of the company, there was no presumption in his favor or against the railroad company, as set forth in the above section. This case, therefore, is not governed by that section, but falls under the general law of master and servant. Under that law, the burden was upon the plaintiff to show negligence on the part of the defendant in supplying him with a defective hammer. Before he can recover, under the facts disclosed by this record, he must show that the hammer was defective, and that the company knew it or could have ascertained it by the exercise of

ordinary care and diligence. · The mere fact that the hammer was defective, and that other hammers were defective, and that the injury resulted therefrom, is not sufficient to authorize the jury to infer negligence on the part of the company in the purchase or selection .of these hammers.

Wood in his "Law of Master and Servant," §368, says: "From the mere fact that an injury results to a servant from a latent defect in machinery or appliances of the business, no presumption of negligence on the master's part is raised. There must be evidence of negligence connecting him with the injury. The fact that machinery has been previously protected, or that subsequent to the injury guards were provided for it, is not evidence from which negligence may be inferred. The mere fact that the machinery proves defective, and that an injury results therefrom, does not fix the master's liability. *Prima facie* it is presumed that the master has discharged his duty to the servant, and that he was not at fault. Therefore the servant must overcome this presumption by proof of fault on the master's part, either by showing that he knew or ought to have known of the defects," etc. "The burden of proving negligence upon the part of the master is upon the servant, and he is bound to show that the injury arose from de- · fects known to the master, or which he would have known by the exercise of ordinary care, or that he has failed to observe precautions essential to the protection of the servants which ordinary prudence would have suggested."

The same work, §382, says: "The servant seeking to recover for an injury, takes the burden upon himself of establishing negligence on the part of the master, and due care on his own part. And he is met by two presumptions, both of which he must overcome in order to entitle him to a recovery. First, that the master has

discharged his duty to him by providing suitable instrumentalities for the business, and in keeping them in condition, and this involves proof of something more than the mere fact that the injury resulted from a defect in the machinery. It imposes upon him the burden of showing that the master had notice of the defect, or that in the exercise of that ordinary care which he is bound to observe, he would have known of it. When this is established, he is met by another presumption, the force of which must be overcome by him, and that is, that he assumed all the usual and ordinary hazards of the business."

Mr. Thompson, in his work on Negligence, p. 1053, §48, uses the following language: "In an action by an employé against his employer, for injuries sustained by the former in the course of his employment, from defective appliances, the presumption is that the appliances were not defective; and when it is shown that they were, then there is a further presumption that the employer had no notice or knowledge of this fact, and was not negligently ignorant of it."

See also Pierce on Railroads, 382.

Applying these rules to the evidence, we do not think that the plaintiff was entitled to recover. There was no evidence in the record going to show any negligence whatever on the part of the company or its officers, unless it could be inferred from the fact that other hammers broke the same day; and as we have seen from the above extracts, that is not sufficient proof of negligence. On the contrary, there is evidence to show that, as far as could be ascertained from an examination of the hammers, they are first class. Other witnesses said that they looked as if they were first class, and that "they" (meaning we suppose the officers of the company) said they were first class. We cannot hold—for in our opinion it is not the law—that an em-

ployer is liable to his servant when he furnishes him with an axe, a wagon, a saw, a hammer or any other tool which appears to be first class, and which subsequently, by some latent defect, breaks and injures the servant. If such were the law, every farmer, contractor or other employer would be liable to his employé when he furnished him tools and they broke and injured him on account of some latent defect which could not be ascertained by the exercise of ordinary care.

For these reasons we hold that this verdict was contrary to law and to the evidence, and that the trial judge erred in refusing to grant a new trial upon this ground. See also *Reid* v. *C. R. R. Co.*, 81 *Ga.* 694.

*Judgment reversed.*