## SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY *v.* FLAHERTY.

1. When on the trial of an action against a railway company it affirmatively appeared that the damage complained of was not caused either "by the running of the locomotives, or cars, or other machinery of such company," or by some person in its employment and service, it was erroneous to charge that a presumption of negligence arose against the company.

2. A charge which in effect instructed the jury that the plaintiff's omission to look out for her own safety was not negligence ought not to have been given.

3. Erroneous instructions as to vital and material questions of law require a new trial, unless the verdict complained of was demanded by the evidence. The verdict rendered in this case was not so demanded.

Argued February 15, — Decided April 4, 1900.

Action for damages.   Before Judge Norwood.   City court of Savannah.   July 13, 1899.

*Erwin, duBignon, Chisholm & Clay,* for plaintiff in error.
*Twiggs & Oliver,* contra.

LUMPKIN, P. J.   The petition of Mrs. Mary Flaherty against the Savannah, Florida and Western Railway Company made, in substance, the following case: The defendant, for the purpose of rolling trucks across its passenger-depot in the city of Savannah, the floor of which was elevated above the railway-tracks, had constructed a crossing at each end of which was a steep incline from the level of the floor to that of the tracks.   On the evening of May 30, 1898, a train for the reception of passengers was so placed in the depot that the steps of the ladies' car thereto attached were immediately over the incline at one end of this cross-

ing. "The sloping edge," which was slippery with grease or some other substance, would not have been visible to a casual observer, even under favorable conditions; and, "on the evening petitioner was injured, it was a dark and rainy afternoon and the electric lights were lit in the city." The plaintiff purchased a ticket and undertook to enter the ladies' car as a passenger. In the exercise of due diligence, and being wholly unaware of the "dangerous trap," her right foot encountered the unexpected slope at the moment she was raising her left foot to place it on the step of the car; her right foot slipped from under her and she fell, sustaining most painful, serious, and permanent injuries. The company was negligent in stopping the car at the point indicated, without covering the gangway or edge of the platform. A verdict for $4,500 was returned for the plaintiff, and the case is here upon exception by the defendant to a judgment overruling its motion for a new trial.

1. The court gave in charge to the jury section 2321 of the Civil Code, and in effect instructed them that, under its provisions, there was a presumption of negligence against the company in the present case. That section reads as follows: "A railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." The plaintiff certainly was not injured by "the running of the locomotives, or cars, or other machinery" of the company. Everything it owned or possessed having any connection with her fall was at a dead standstill. Nothing was "running." Was the damage to her "done by any person in the employment and service" of the defendant. We are prepared to say with the utmost confidence it was not. Granting that the incline was improperly constructed or kept, and that the placing of the steps of the car over the slope of the incline was, relatively to those invited to board the train in this position, a negligent act, it still can not be said that any particular employee of the company did any direct wrong to the plain-

tiff. Neither the construction of the crossing nor the backing of the train to the place at which it had been stopped when the plaintiff endeavored to enter the car was an act of a person in the company's service, which, in and of itself, could possibly have caused hurt to Mrs. Flaherty. The words last quoted embrace only acts done by employees which are the direct and efficient cause of injury to another. In other words, there must be such an act as would subject the employee himself to an action of tort. Applying this test to the present case, it would be impossible for Mrs. Flaherty, under the facts alleged in her petition or proved at the trial, to designate any servant of the defendant against whom she could maintain an action. The language of the section under consideration is plain and unambiguous, and it seems clear that, in order to render its provisions applicable to a given case, it must affirmatively appear, as the law itself declares, that the injury complained of resulted either from "the running of the locomotives, or cars, or other machinery" of the company, or from some wrongful act of an employee which itself was the immediate cause of the damage to the person injured. The case of *Georgia Railroad* v. *Nelms,* 83 *Ga.* 70, is directly in point. See the opinion and the authorities therein cited. In *Rome Railroad Co.* v. *Thompson,* 101 *Ga.* 26, it appeared that "the plaintiff's husband lost his life through a defect in a platform which had been erected as a part of a contrivance for weighing cars," and it was held that a charge to the effect that a presumption of negligence arose against the defendant company was "entirely inapplicable to the facts." Counsel for the defendant in error cited numerous cases in which this court has held that the presumption of negligence arose against a railroad company. We have carefully examined all of them, and find that, in every instance, the injury resulted from the running of a locomotive, car, or train, or from some act of an employee which directly and immediately caused the damage. The expression, "Where an injury is committed by a railroad, the presumption is always against the road," occurring in the third headnote to the case of *Central Railroad Co.* v. *Brinson,* 64 *Ga.* 475, and the remark of Judge Crawford on page 478, that "Railroad companies are liable for injuries done by them to per-

sons and to property, and whenever one has been shown to have been committed, the presumption of the law is against them," must be understood and interpreted with reference to the facts of that particular case, which was an action to recover damages for the careless running of a train, whereby the plaintiff lost his foot.   Certainly no direct ruling was therein invoked or made in conflict with what is herein laid down, for in that case no point was raised as to the application of the provisions of the section of the code above cited to the facts then under consideration.

2. Complaint is also made that the court, in instructing the jury as to the rights of one who purchases a ticket and is about to board a train, erred in charging as follows : " He is not bound to be looking to see whether he is going to tread into a hole or stumble over an obstacle when he is passing along the platform to the train." It can scarcely be doubted that this charge was erroneous.   Applied to the facts of the present case, it was the same, in effect, as telling the jury that Mrs. Flaherty, while walking along the platform to the train, was under no duty of observing any care in looking out for her own safety; and this was but another way of saying that her failure to do so would not be negligent. . If anything is settled in this State, it is that, as a general rule, questions as to what conduct constitutes negligence are peculiarly for determination by a jury.   As was remarked, with his characteristic pithiness, by Chief Justice Bleckley in *Richmond R. R. Co.* v. *Howard,* 79 *Ga.* 53 : " The court cannot instruct the jury what a prudent man would do, for in legal contemplation the jury know it better than the court. If instructions on that subject had to be given, the jury would be the instructors and the court the instructed ; that is, the jury would charge the judge on that part of the case, rather than receive a charge from him.   It is not for the court to teach the jury the ways of the prudent man, but to warn them of the duty on the part of all others to make their ways like his." However much at fault the company may have been, Mrs. Flaherty was not entitled to any recovery if by the exercise of ordinary care on her part she could have avoided the consequences to herself of its negligence.   If there was not such a want of care on her

part as to entirely defeat a recovery, notwithstanding her negligence appreciably contributed to the injury, her damages would be reduced.    The main defenses relied upon were, (1) that Mrs. Flaherty's fall was due entirely to a want of proper care on her part; and (2) that in any event it was a case for a reduction of damages on account of contributory negligence on her part. The charge with which we are now dealing really amounted to a direction that the jury should award full damages.    It can hardly have had any effect other than to cut off completely both branches of the company's defense.

3. We feel constrained to order a new trial because of the errors above pointed out.    The case should certainly be given this direction unless, as was insisted by counsel for the defendant in error, the verdict was demanded by the evidence.    Of course, no one would undertake to say that the jury were obliged to find for the plaintiff exactly $4,500.    But it was urged that the errors in the charge could have had no bearing on the question of the amount of the verdict, and that the evidence did demand a finding that the defendant was liable to respond in damages.    We can not go even to this extent.    There were serious conflicts in the testimony on material questions at issue. The plaintiff testified that it was dark enough to require the station to be lighted up, and that the incline upon which she slipped was obscured from view by a shadow cast by an electric light, so that the sloping edge could not readily be seen.    There was, on the other hand, testimony to the effect that at the time the plaintiff fell it was broad open daylight and that no artificial lights were burning in the station.    Again, she attributed her fall exclusively to the slipping of her foot upon the edge of the incline, and contended that it was slippery.    Her testimony to this effect was met by evidence that the surface of the incline was not slippery, and also by the testimony of a witness who swore that Mrs. Flaherty said immediately after the injury that her knees gave way under her and she went down, thus warranting the inference that her fall was at least in some measure due to an infirmity or weakness in her limbs, for which the company was not, of course, responsible, and with the consequences of which it could not fairly be made chargeable.    In view of these

conflicts in the evidence, we feel satisfied the case should be tried again.   "If the evidence be, in truth, as strong as it is claimed to be, it may well be trusted to win a second verdict.   Let it be subjected to that test, and if it succeeds, we shall better understand its power and know better how to prize it at its true worth."   *Sewell* v. *Holland,* 54 *Ga.* 613.   "A good case will not be apt to miscarry on a second venture," as was observed by Judge Bleckley in *Delane* v. *Central Railroad,* 59 *Ga.* 634. Especially is this true if, as in the present instance, the plaintiff be represented by able and zealous counsel.

*Judgment reversed.    All the Justices concurring.*