SEABOARD AIR-LINE RAILWAY COMPANY *v.* FOUNTAIN.

No. 8340. OCTOBER 15, 1931.

*B. Hugh Burgess* and *John B. Gamble,* for plaintiff in error.
*Poole & Fraser,* contra.

HINES, J. Fountain sued the Seaboard Air-Line Railway Company for a personal injury. In his petition he makes this case:

He was a passenger on the defendant's train from Atlanta to Tucker. When the train was nearing Tucker an employee of the defendant announced that the next stop would be Tucker. After the train came to a complete stop he went to the door of the coach, when an employee of the railway stationed thereat announced to him that they were at Tucker. The train was composed of several coaches, and the one in which he was riding was the last coach of the train, which stopped some distance west of the station, placing his coach several hundred yards west of the railroad station. When he stepped off of the train at the place designated by the company, and while on the right of way he was precipitated down a steep embankment and fell upon an old tin tub, and received certain injuries which are fully set out in the petition. At the time he alighted from the train it was a very dark night. There were no lights along the right of way at the place he was told by the defendant to alight. He did not know that there was a steep embankment leading from the right of way, nor did he see it, and as he attempted to leave the right of way he fell down the embankment. The defendant failed to provide him a safe place upon which to alight from said train. At the time he was injured he was an able-bodied man, and was earning and capable of earning $2,500 per year. He has been totally disabled from performing any of his customary duties, and his disability will continue for an indefinite period of time. His earning capacity has been permanently impaired. He had an expectancy of 32.36 years. The following acts of negligence on the part of the defendant were the proximate cause of his injuries: Failing to furnish him a safe place upon which to alight from the train; failing to give to him that extraordinary degree of care owing to a passenger for hire; maintaining adjacent to the right of way a steep declivity down which passengers alighting from its trains might fall; stopping the train and requiring him to alight from it upon the right of way which was not lighted on a dark night; requiring him, as a passenger for hire, to alight in the dark upon its right of way adjacent to a dangerous declivity; and negligently injuring and damaging him. He prayed judgment for $15,000.

The defendant demurred upon the ground that the petition set forth no cause of action; and demurred specially upon ten grounds. The court overruled the demurrers. The defendant ex-

cepted pendente lite, and assigns error on the rulings so excepted to. In its answer the defendant denied all the acts of negligence charged, and denied that it injured the plaintiff. It averred that the plaintiff was carried to his destination, and alighted in safety; and that if the plaintiff received any injury thereafter, it was due to his own negligence. The trial resulted in a verdict for the plaintiff for $1,000. The defendant moved for a new trial upon the general grounds, and upon three special grounds to which reference will be hereinafter made. The judge overruled the motion for new trial; and the defendant excepted.

■ The petition, the material portions of which appear above, sets out a cause of action; and the trial judge did not err in overruling the general ground of the demurrer. Counsel for the railway company base the contrary contention upon the proposition that "if the grounds of the special demurrer had been sustained by the court, then the ground of the general demurrer was good and should have been sustained." The converse of this proposition is true; that is, if the special grounds of the demurrer are not good, the general ground is bad. We shall attempt to show that the special grounds of demurrer are without merit. So we are of the opinion that the trial judge did not err in overruling the general demurrer.

■ Are the special grounds of demurrer good? We deal only with the grounds upon which counsel for the railway insist in their brief. The first ground is directed against a portion of a sentence in the 11th paragraph of the petition, as follows: "and the defendant failed to furnish him as such passenger a safe place upon which to alight from said train." The grounds of attack are, that this averment is too indefinite and uncertain, that it fails to put the defendant upon notice in which respect it failed to furnish plaintiff a safe place to alight from the train, that it fails to set out in what manner the place upon which he alighted was unsafe, that it is a mere conclusion unsupported by other allegations in this paragraph, and that it is in conflict with other averments in the petition that plaintiff alighted from the train in safety. Practically the same averment is made in paragraph 18 of the petition; and the defendant demurs to it upon the same grounds. The defendant specially demurred to the averments in paragraph 18, that the defendant was negligent, "in maintaining

adjacent to its right of way a steep declivity down which passengers alighting from its train may fall; in stopping its train and requiring your petitioner as a passenger for hire to alight from its train upon its right of way which was not lighted upon a dark night; in stopping its train several hundred yards away from the railroad station; and in negligently injuring and damaging your petitioner," on the grounds that they are all general, and do not specifically set forth wherein and how the company was negligent, the angle of the declivity, how far removed from the railway tracks, the distance between the declivity and the right of way, the height or depth of the declivity, and the general condition of the road-bed at the point where the petitioner alighted. Taken apart from other allegations of the petition, some of these averments might seem to be subject to the criticisms of the special demurrer; but viewed in the light of the petition as a whole, they are without merit. The others are not subject to the criticisms urged against them. So we are of the opinion that the trial judge did not err in overruling them.

■ The judge gave in charge to the jury this instruction: "And in this connection I will charge you this, that in all cases against railroad companies for damages done to persons or property, proof of injury inflicted by the running of locomotives or cars of such companies shall be prima facie evidence of the lack of reasonable skill and care on the part of the company. But this, of course, is subject to rebuttal. If the railroad company shows to your satisfaction that they did exercise the care required by the law to be exercised, that they were not guilty of such negligence, then of course that presumption, if there be such (prima facie I should have said instead of presumption, and I withdraw the presumption), would be rebutted." One of the errors assigned on this instruction is that it is not supported by the pleadings, the evidence or the law. This instruction is based upon the act of August 24, 1929, which provides "that in all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of locomotives or cars of such company shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury." Ga. Laws 1929, p. 315. Under this statute proof of an injury is prima facie evidence of the want of reasonable skill

and care on the part of the servants of the railroad company only in case where such injury is inflicted by the running of a locomotive or cars of such company. If the proof does not disclose that the injury was inflicted by the running of a locomotive or cars of the company, then there is no prima facie evidence of want of reasonable skill and care on the part of the servants of the company. This was the applicable rule under section 2780 of the Civil Code of 1910, which made a railroad company liable for damages done to persons or property by the running of its locomotives or cars, unless the company made it appear that its servants had exercised all ordinary and reasonable care, the presumption in all cases being against the company. *Ga. R. &c. Co.* v. *Nelms*, 83 *Ga.* 70 (9 S. E. 1049, 20 Am. St. R. 308) ; *S., F. & W. Ry. Co.* v. *Flaherty*, 110 *Ga.* 335 (35 S. E. 677). This principle is applicable under the statute with which we are dealing. If the injury of which the plaintiff complains was not "inflicted by the running of locomotives or cars" of the company, no "prima facie evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury" would arise from the proof of the injury alone. What, then, is the meaning of the language, "by the running of locomotives or cars" of railroad companies, as used in the statute under consideration? Must the injury be inflicted by the locomotive or car while in motion, or can the injury arise from the improper operation of the locomotive or car whilst the running is in progress at the time and place in question?

In *E. T., Va. & Ga. Ry. Co.* v. *Hesters*, 90 *Ga.* 11 (15 S. E. 828), this court held that the diligence and care required by section 3033 of the Code of 1882 (section 2780 of the present Code) included keeping the locomotive in proper condition to be run with ordinary safety, as well as properly managing and operating it whilst it was in progress at the time and place in question. In *Ga. Ry. &c. Co.* v. *Reeves*, 123 *Ga.* 697, 705 (51 S. E. 610), it was said that "it would be too narrow and restricted a view to hold that if while passengers are in transit upon a car it was stopped for one or more of them to alight, or to be transferred to another car, and the injury resulted to one of them by reason of turning out the lights in the car, or causing it to jerk while the passenger was alighting, this was not done by the running of the car, or by a

person in the service of the company, if such person put out the light or caused the jerk. Such an occurrence would be a part of the actual transit. The running of the car, as used in the section of the code above quoted, is not confined to a mere collision with a person on the track. An unnecessary jerk causing an injury to a passenger while alighting is a part of the running, within the reason and spirit of the statute. Moreover, if while the passenger is in the act of alighting an employee of the company turns out the lights or causes the car to jerk, and as a result the passenger is injured, this would be damage done by a person in the employment and service of the company, within the meaning of the statute." In that case the passenger injured was riding on a street-car, which stopped to permit passengers to alight or to be transferred to another car. While the passenger was in the act of stepping from one car to the other, there was a sudden jerk or movement of the car from which she was stepping, by which she failed to get a firm footing upon the step of the car to which she was passing, and in consequence she fell to the ground and was injured. In the present case, under the testimony of the plaintiff, it appears that the coach in which he was riding was stopped 100 or 150 yards from the depot, that by direction of the flagman he there alighted from the train on a dark night and at an unsafe place, and that in consequence he was injured. It is insisted by the plaintiff that the train was stopped before it reached the depot, and at a place where it was unsafe for passengers to alight, and that in consequence of these facts he was injured. In such circumstances it might be held that the plaintiff was hurt by the operation of the train, and that such operation comes within the meaning of the word, "running," as used in the statute with which we are dealing. It might not be stretching the construction of the word "running," to hold that it embraces the general operation of a train, including the improper operation thereof; and that if the train was stopped on a dark night at a place not provided for passengers to alight, which subjected a passenger to danger in getting from the place where he alighted, his injury was caused by the running of the train. But we do not deem it necessary in this case to decide this point.

We think the charge of the court was erroneous for the reason which we will now give. The act of August 24, 1929, makes proof

of an injury inflicted by the running of locomotives or cars prima facie evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury. This statute is taken in totidem verbis from the statute of Mississippi upon this subject. In construing the Mississippi statute the Supreme Court of that State held that it was intended to operate only when the facts were not or could not be produced, in which event the burden was upon the company to produce the facts which are, as a general rule, peculiarly within its knowledge; that an instruction upon the principle embraced in this statute ought not to be given where the testimony in the case sufficiently explains every material fact connected with the infliction of the injury; that this statute has served its purpose when it compels the railroad company to explain how the injury occurred; and that the question of negligence or no negligence is to be decided from the facts in the case. Gulf &c. R. Co. v. Brown, 138 Miss. 39, 66 (102 So. 855); Gulf &c. R. Co. v. Arrington, 142 Miss. 102 (107 So. 378); Columbus &c. Ry. Co. v. Fondren, 145 Miss. 679 (110 So. 365). It is a well-settled general rule that when a statute has been adopted from another State, the judicial construction already placed thereon by the highest court of the jurisdiction from which it is taken accompanies it, and is treated as incorporated therein. Brown v. Burke, 22 Ga. 574; Thrower v. State, 117 Ga. 753, 757 (45 S. E. 126); 25 R. C. L. 1069, § 294, note 4, and cit. The constitutionality of this act was attacked in Mobile &c. R. Co. v. Hicks, 91 Miss. 273 (46 So. 360, 124 Am. St. R. 679), on the ground that it deprived the railroad company of equal protection of the laws and of due process of law. Its constitutionality was sustained by the Supreme Court of Mississippi, and to review this judgment the railroad company took the case to the Supreme Court of the United States. The Supreme Court sustained the judgment of the Supreme Court of Mississippi. Mobile &c. R. Co. v. Turnipseed, 219 U. S. 37 (31 Sup. Ct. 136, 55 L. ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463). These attacks upon this statute were based upon the contention that its effect was to create a presumption of liability, thereby giving to it an effect in excess of a mere temporary inference of fact. The Supreme Court held that "The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the con-

trary. When that is done the inference is at an end, and the question of negligence is one for the jury upon all of the evidence. In default of such evidence, the defendant, in a civil case, must lose, for the prima facie case is enough as a matter of law." The Supreme Court further held that "The statute as construed and applied by the Mississippi court in this case is unobjectionable."

In W. & A. R. Co. v. Henderson, 279 U. S. 639 (49 Sup. Ct. 445, 73 L. ed. 884), the Supreme Court of the United States held that section 2780 of the Code of 1910 was unconstitutional and void, because to permit the jury to consider and weigh the presumption of negligence under this section, as evidence against the testimony of the company's witnesses tending affirmatively to prove due care, was unreasonable and arbitrary and violative of the due-process clause of the 14th amendment. The court distinguished that case from Mobile &c. R. Co. v. Turnipseed, supra. The court held that the statute in the latter case was constitutional, for the reason that the only legal effect of the inference created by the Mississippi statute was to cast upon the railroad company the duty of producing some evidence to the contrary, and that when this was done the inference was at an end, and the question of negligence was one for the jury from all the evidence. The court further said that "The Mississippi statute created merely a temporary inference of fact that vanished upon the introduction of opposing evidence. . . That of Georgia, as construed in this case, creates an inference that is given effect of evidence to be weighed against opposing testimony, and is to prevail unless such testimony is found by the jury to preponderate. The presumption raised by § 2780 is unreasonable and arbitrary, and violates the due-process clause of the fourteenth amendment. Manley v. Georgia, [279 U. S. 1, 49 Sup. Ct. 215, 73 L. ed. 575]; McFarland v. American Sugar Co., 241 U. S. 79 [36 Sup. Ct. 498, 60 L. ed. 899]; Bailey v. Alabama, 219 U. S. 219 [31 Sup. Ct. 145, 55 L. ed. 191]." Thus the Supreme Court of the United States by clear implication holds that the Mississippi statute, which we have under consideration, would be unconstitutional and void if the Supreme Court of that State had held that it had any greater effect than to create a mere inference which would disappear whenever the railroad company introduced any evidence tending to disprove the existence of such negligence.

In view of the construction of the Mississippi statute by the Supreme Court of that State and the Supreme Court of the United States, we feel constrained to hold that the instruction complained of by the railroad company was erroneous, and that a new trial should be granted. While the writer yields to the ruling of the Supreme Court of the United States in W. & A. R. Co. *v.* Henderson, supra, he feels that it is but proper to state, with becoming modesty he hopes, that the principle announced by that court is too narrow and does not give due weight to the inference of negligence created by the Mississippi and Georgia statutes.

■ The contention of counsel for the railway company that the act of August 24, 1929, violates the constitution of the United States and of this State, upon the grounds stated in the motion for new trial, is not well founded. The statute is not arbitrary and unreasonable, and does not deprive the railway company of due process of law. This was so held in the two cases cited from the Supreme Court of the United States; and this holding is in harmony with the rulings of this court.

*Judgment reversed. All the Justices concur.*

•ATKINSON, J., concurs in the judgment of reversal, but not in all that is said in the third division. The statute (Ga. L. 1929, pp. 315-316), provides that "in all actions against railroad companies, for damages done to persons or property, proof of injury inflicted by the running of locomotives or cars of such company shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury." This should be construed as a provision for raising a presumption of negligence against a railroad company in such actions by "proof of injury inflicted by the running of locomotives or cars of such company." Under such construction the act should be held to be unconstitutional under application of the principles announced by the Supreme Court of the United States in Western & Atlantic R. Co. *v.* Henderson, 279 U. S. 639; Mobile &c. R. Co. *v.* Turnipseed, 219 U. S. 37 (supra).

Mr. Justice HILL concurs in the foregoing.