41181. SWAILS v. CARPENTER.

SUBMITTED MARCH 1, 1965—DECIDED JULY 20, 1965.

R. R. Buckley, for plaintiff in error.

*Reinhardt, Ireland & Whitley, Glenn Whitley,* contra.

PANNELL, Judge. E. D. Swails filed suit against W. C. Carpenter, Sr. The petition, as finally amended and recast, contains, among others, the following allegations:

"4. Defendant is engaged in the general operation of a farm and was so engaged on April 20, 1962. On April 20, 1962, defendant employed your petitioner to work as a farm laborer for a period of the whole daylight hours of said date, said labor to be performed and carried out as directed by defendant. Your petitioner accepted said employment and began work as directed by defendant. Defendant knew at the time of his employment that petitioner had had an injury to his leg and that the leg had some stiffness.

"5. At or about 11:30 A.M. on April 20, 1962, defendant instructed and directed to petitioner to drive an Allis Chalmers tractor, the model being unknown to your petitioner but which defendant knows, in harrowing a field at a depth of approximately three inches, said field being the field immediately west of the W. C. Carpenter, Jr., home, located in Tift County, Georgia.

"6. Defendant told petitioner to drive said tractor at fifth speed, the speed of which would carry said tractor across the field as directed by defendant at a speed of 12 to 14 miles per hour.

"7. Petitioner at this time did not begin to harrow said field, but instead said to petitioner, [sic] 'If you want me to drive in that speed across your field, you drive it first.' Defendant answered, 'It's alright, I want it driven in that speed because I want you to stay ahead of me as I plant.'

"8. Petitioner, after harrowing approximately one-third of said field with the tractor as directed by defendant, plowed over an area located on the north side of said field which was less firm than the rest of the field, the area being approximately four feet in diameter and three and one-half feet deep, which petitioner later found to be an old stump hole filled with dirt and not discernible to the eye.

"9. Defendant was familiar with the land and the particular field and defendant knew or should have known that there had been stumps on the north side of said field, there being old stumps lying adjacent to this field and near the point of the stump hole, and that some years previous, unknown to petitioner but known to defendant, the stumps had been removed and placed adjacent to this field and the holes of which were approximately the same size and shape as that alleged in paragraph eight were filled with dirt. Approximately two days previously, a rain had caused the *dirt* in the stump holes to become softer than the surrounding area of the field.

"10. Petitioner had never been on the land and the particular field as stated in paragraph five and did not know nor had the equal means of knowing at the time petitioner was directed to plow of the danger incident thereto, nor in the exercise of ordinary care could the petitioner have ascertained the same, your petitioner having been assured that it was safe to proceed as alleged in paragraph 7.

"11. As petitioner was plowing over said stump hole as alleged in paragraph six the right rear wheel of the tractor sank into said hole suddenly and violently, jerking your petitioner off of the tractor and onto said tractor's right rear wheel, this occurring approximately five hours after petitioner began plowing said field. The right rear wheel caught petitioner and carried him down and under the wheel and upon the ground, trapping your petitioner thereunder."

The allegations of negligence were as follows: "(a) in failing to provide a safe place for petitioner to work. (b) In failing to warn your petitioner of a latent defect [or] danger incident to employment in that the ground was less firm at spots over which your petitioner might travel in the course of this employment, the same being unknown to your petitioner, of which defendant knows, as per Georgia Code Section 66-301. (c) In assuring your petitioner it was safe to drive said tractor over said field in said condition. (d) In requiring and directing petitioner to drive at a speed which defendant knew to be unsafe under the conditions."

The testimony in the case, except as otherwise indicated in the opinion, was substantially as follows: That on April 20, 1962, the plaintiff lived on the defendant's farm and had been working for him about two months; that on the morning of that date the defendant instructed him to drive the tractor in fifth gear over this field; that he had been driving this tractor in 3rd gear and that he told the defendant that if he wanted him to drive in 5th gear for him to try it the first round; that after the defendant drove it in 5th gear, he got off and told him it was all right to drive the tractor in 5th gear; that he wanted him to stay ahead of him; that he drove the tractor as directed at a speed of about 12 to 14 miles per hour; that after about three hours of harrowing in that field the tractor ran into a hole and went down suddenly as if it had fallen in a hole of water, throwing him off and under the right rear wheel; that he did not see the hole before he ran over it because it was filled with dirt and was level with the surrounding dirt and was indiscernible to the naked eye; that he had never been in this particular field before but knew that corn had been grown on it; that subsequent to the accident he saw some stumps lying in the adjacent pasture but does not know where they came from; that in his opinion the hole in which the tractor fell was where a stump had been pulled out and had since become filled with dirt; that he did not bog the tractor down in that field before and that the only conversation he had with the defendant that morning was when the defendant told him to drive the tractor in 5th gear.

Dalton Branon testified that on the morning of April 20,

1962, he, plaintiff and defendant were in this particular field planting corn; that plaintiff was harrowing the land and defendant was planting the corn and that he was filling guano hoppers for defendant off the back of a truck; that the north end of the field where the accident happened was soft boggy low land; that immediately prior to the accident the plaintiff bogged his tractor down in the same general area where the accident subsequently occurred and that the defendant pulled plaintiff's tractor out of the mud and told plaintiff not to go back in there, for plaintiff to leave it off and he (defendant) would get it later himself, that it was so wet; that the very next round the accident occurred in the same vicinity as where plaintiff had previously bogged down; that he didn't actually see plaintiff at the time plaintiff fell from the tractor, but heard defendant holler for help and that he assisted in pulling plaintiff from beneath the left rear wheel of the tractor and getting plaintiff to the hospital.

W. C. Carpenter, Sr., the defendant, was called for cross examination by the plaintiff and testified that several days prior to April 20, 1962, he employed plaintiff to drive a tractor for him; that on April 20, 1962, he had the plaintiff harrowing land with a tractor in a 30 acre field near the home of W. C. Carpenter, Jr.; that he had owned the land since 1935, except for a few years that he let his son have it; that he had walked and plowed over the field many times in the past and was familiar with the field; that he plowed over the field and the area where the accident occurred approximately three weeks prior to the accident; that there had been one big rain the last of March and could have been other rains; that several days prior to the accident he told plaintiff to drive the tractor in 5th gear so it would pulverize the ground real good; that on April 20, 1962, between 10 and 11 a.m. the plaintiff was involved in an accident at the north end of the field; that he did not see the plaintiff fall from the tractor but just happened to look up and see the tractor stopped and figured that the plaintiff had bogged down again so he picked up his plows and drove down to plaintiff's stopped tractor; that as he approached the tractor he saw the plaintiff's foot sticking from underneath the left

or west side of the tractor; that he immediately jumped from his tractor and switched off the tractor that was on top of the plaintiff and he and Dalton Branon got the plaintiff from beneath the tractor; that he had not noticed the plaintiff previously to this accident except the time when he bogged down just a little before this accident; that he talked with the plaintiff when he pulled him out of that place just previously to the time of this accident; that there were no trees in this field except three or four little pine trees at the north end of the field and there had not been any trees in that field since 1935. With reference to the stumps located in the pasture adjacent to this field he testified that some of those stumps might have come out of the field but most of them came out of the pasture.

The evidence shows, without dispute, that the last stump was pulled from the field involved in the year 1935, and that the stump holes were filled with dirt; that the stump hole involved in the present case was also filled with dirt and was undiscernible to the naked eye. There is no evidence that the defendant knew of this particular stump hole or remembered its location over a period of more than 25 years. There is no evidence that the defendant knew of this stump hole or in the exercise of ordinary care should have known of its location after the lapse of more than 25 years. The evidence, on the other hand, is to the contrary. This same location was plowed by the defendant a short time before the accident and had been planted and cultivated for a number of years without showing any evidence of a stump hole. Both the plaintiff and the defendant testified that there had been a heavy rain a short time prior to the accident. Both parties had knowledge of this fact. To hold defendant liable in this case would place the burden upon every farmer who clears a field of stumps to remember the location of each stump hole, properly mark the same, and warn all of his laborers and tractor operators not to go near them. The fact that some of the stumps on an adjoining pasture could have come from this field does not conflict with this undisputed testimony or raise an inference of recent stump pulling, so as to show recent knowledge of the location of a stump hole. It is obvious from reading the evidence that when the defendant

told the plaintiff he wanted plaintiff to drive the tractor in fifth gear and the plaintiff said, "You drive it around first," the plaintiff was dubious of the *speed* of the tractor in fifth gear. There is no evidence that the speed of the tractor had anything to do with the tractor sinking in the hole. The speed, therefore, was neither the proximate cause nor the contributing cause of the injuries received by the plaintiff. If it were, it was caused by excessive speed on the part of the plaintiff in making a turn of the tractor to harrow another row, as shown by the testimony of the plaintiff in stating that the defendant told him, " 'When you git to the end just lift your harrow, turn around and come back.' And that's just what I was doing."

In our opinion, however, when the plaintiff's testimony is properly construed, we are forced to the conclusion that the evidence demands a finding that no representations were made by the defendant to the plaintiff that "it was all right" to drive in fifth gear, as testified to on one occasion by the plaintiff. It appears also the plaintiff testified that when the defendant drove the tractor on the first round and brought it back to where the plaintiff was standing he did not say anything to the plaintiff. At another point, he stated that the defendant just told him to drive the tractor at that speed. At the close of the evidence, the plaintiff was called back for re-direct examination in an effort to clarify this very testimony, and the following took place:

"Q. Mr. Swails, I am going to ask Mrs. Miller, the court reporter, to read you a question that I asked you yesterday, and after she finishes reading the question, I want you to state whether or not you understood the question. Reporter rereads the following question: 'Did he say anything else to you? A. Yes, he did. Q. Mr. Swails, did you understand that question yesterday when I asked you that question? A. I didn't, no, I didn't. I have such a ringing in my ears since that went through my face till I couldn't hear good at some times. Q. Do you understand the question now? A. I do, yes, sir. Q. All right, would you answer that question? A. I will. Q. Please go ahead. A. Well, he told me when I got on that tractor to just drive it in that speed, he did; and I told him to go around

the first round, he did; and I got on it and I drove it.  Q.  Did he tell you anything before you got on the tractor?  A.  No, he didn't—only he told me to drive it in that speed."

This shows conclusively that no representations were made to the plaintiff by the defendant that driving a tractor in fifth gear was safe.  There is absolutely no testimony that the defendant represented that the *premises were safe* for the driving of a tractor at such speed.

The plaintiff in error, in contending that the evidence was sufficient to authorize a recovery by him, relies upon the doctrine set forth in *Bush v. West Yellow Pine Co.*, 2 Ga. App. 295 (2) (58 SE 529); *Smith v. Southern R. Co.*, 8 Ga. App. 822 (70 SE 192); *Massee & Felton Lumber Co. v. Ivey*, 12 Ga. App. 583 (77 SE 1130); and *Borochoff v. Fowler*, 98 Ga. App. 411 (105 SE2d 764), which doctrine, simply stated, is that where the master commands the servant to proceed with work *which the master knows is dangerous* with the assurance to the servant that it is not dangerous, such act on the part of the master relieves the servant of the implied agreement of assumption of risk, and the master cannot set up as a defense the assumption of risk set forth in *Code* § 66-303, which reads as follows: "A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself.  In suits for injuries arising from the negligence of the master in failing to comply with the duties imposed by section 66-301, in order that the servant may recover it must appear that the master knew or ought to have known of the incompetency of the other servant, or of the defects or danger in the machinery supplied; and it must also appear that the servant injured did not know and had no equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof.  (92 Ga. 713 (18 SE 974); 83 Ga. 75 (9 SE 1049); 68 Ga. 842)."

What the plaintiff in error overlooks is that the elimination of the assumption of risk thus produced applies only to the particular risk which the master warranted as safe, and while as to that particular risk the master might not be in the exercise of ordinary care this does not authorize a finding against the

master unless this particular risk or danger is the proximate cause of the injury. He also overlooks the fact that the elimination of the assumption of risk on the part of the servant, as a defense for the defendant, did not eliminate the defense of contributory negligence on the part of the plaintiff. See *Bush v. West Yellow Pine Co.*, 2 Ga. App. 295, 298, supra. The action is for negligence on the part of the master (*Code* § 66-303), and where it appears from the evidence that the plaintiff servant had equal means with his master of knowing of the defects and the danger, and the danger was as obvious to the plaintiff as it was to the master, the plaintiff is not entitled to recovery, notwithstanding he was assured by the master that he could safely use the tractor in fifth gear and that the plaintiff used it, relying on such assurance and on the "superior knowledge" of the master. See *Bowers v. Louisville &c. R. Co.*, 33 Ga. App. 692 (2) (127 SE 667). The plaintiff was an experienced tractor operator, and if there was danger from operating the tractor at the speed directed, this danger was as obvious to the servant as to the master and the above rule would apply irrespective of such direction and assurances.

As we view the case, there was no negligence on the part of either the master or the servant, and the injuries to the servant were the result of pure accident. The trial judge did not err in granting the judgment for the defendant notwithstanding the verdict for the plaintiff.

*Judgment affirmed. Felton, C. J., Frankum, Eberhardt and Deen, JJ., concur. Nichols, P. J., Bell, P. J., Jordan and Hall, JJ., dissent.*

JORDAN, Judge, dissenting. It is apparent from reading the majority opinion that the evidence is conflicting in several particulars, yet the jury in considering the entire testimony of all the witnesses was authorized to conclude that the plaintiff's tractor fell into a hole which could have been a stump hole and that such was within the knowledge of the defendant and unknown to the plaintiff; that the plaintiff had been driving this tractor at a slower speed which he considered to be safe and that the defendant expressly directed him to drive the tractor at a faster speed over this particular field after protestation

from the plaintiff; and that the defendant also knew of the wet and boggy condition of a portion of this field due to recent heavy rains.

Such authorized conclusions from the evidence clearly bring this case within the holding in *Bush v. West Yellow Pine Co.,* 2 Ga. App. 295 (58 SE 529), Headnote 2 which reads as follows: "While ordinarily the law reads into contracts of employment an agreement on the servant's part to assume the known risks of the employment, so far as he has the capacity to realize and comprehend them, yet this implication may be abrogated by an express or implied contract to the contrary; if the servant complains to the master that the instrumentality appears to be dangerous, and thereupon the master commands him to proceed with the work and assures him there is no danger the law implies a quasi new agreement whereby the master relieves the servant of his former assumption of the risk and places responsibility for resulting injuries upon the master." This case was followed in *Smith v. Southern R. Co.,* 8 Ga. App. 822 (70 SE 158), the principle being more explicitly stated in the following language: "If the servant states to his master that the performance of a duty in a certain way is likely to be dangerous and to render the place where he is working unsafe, and thereupon the master assures him that the act which he requires him to do is not attended with danger, and the servant, upon this assurance and the implicit command of the master, attempts to do the act which the master suggested could safely be done, and, in doing it, is injured, the master is liable, because the law implies a new agreement, superseding the agreement to assume the risk, whereby the master relieves the servant of his former assumption of the risk, and places the responsibility for the results of his command upon himself." It was again followed in *Massee & Felton Lumber Co. v. Ivey,* 12 Ga. App. 583 (77 SE 1130) in which the court expressly declined to overrule the *Bush* and *Smith* cases, supra. This court in *Borochoff v. Fowler,* 98 Ga. App. 411 (105 SE2d 764) again following this line of cases, said at page 416: "Thus, if the servant complains to the master that the instrumentality appears to be dangerous, and thereupon the master commands him to proceed with the work

and assures him there is no danger, then, unless the danger be so obvious and manifest that no prudent man would expose himself thereto, the law implies a quasi new agreement whereby the master relieves the servant from his former assumption of risk, and places responsibility for resulting injuries upon the master."

It is one of the absolute, continuous, and non-assignable duties of the master to refrain from giving negligent orders. *Pappadea v. Clifton*, 96 Ga. App. 115, 122 (99 SE2d 455). While here, there is a conflict in the testimony as to the date on which the defendant gave the plaintiff instructions relative to the speed of the tractor, the jury was authorized to find that such instructions were in fact given and that the speed at which the tractor was being driven as directed by the defendant was the proximate cause of the injury to the plaintiff.

Under my view of the evidence, jury questions were presented as to whether or not the assumption of risk by the servant was abrogated by express direction of the master and whether or not the defendant failed to furnish the plaintiff a safe place in which to work. The trial court therefore erred in sustaining the defendant's motion for a judgment notwithstanding the verdict.

I am authorized to state that Nichols, P. J., Bell, P. J., and Hall, J., concur in this dissent.